## BROWNLEE vs. LOCKWOOD and wife.

1. The administrator of an intestate who resided out of this state, by letters granted in the place of his domicil, for assets situate in that jurisdiction, cannot be called to an account in the courts of this state.

2. And where such an administrator has died without rendering an account in the courts of the state of his intestate's domicil, the courts of this state have not the right to call such administrator's representative, and much less his heir-at-law, to account here for the administration of the estate. Nor can an administrator *de bonis non* of the first intestate, appointed in the place of such intestate's domicil, be called to account here.

3. An administrator who purchases real estate with the surplus of the personal estate of his intestate, after the payment of debts, and takes the title thereto in his own name, holds the real estate in trust for the next of kin of the intestate, at the election of the *cestuis que trust*, who are entitled to take the property if it has increased in value, or to call for an account of the trust money so misapplied; and the heir of such administrator holds it in like trust.

4. In order to ascertain, in such a case, whether the property was purchased with money of the first intestate, an investigation of the accounts of his administratrix may be made in the courts of this state, if necessary. An account thus taken is not had for the purpose of settling the account, or making a decree of distribution here, but to ascertain whether real property in this state over which this court has jurisdiction, and exclusive jurisdiction so far as the title is concerned, is held in trust by one resident of this state for another resident.

5. An administrator *de bonis non* is responsible only for such unadministered assets as he has received. He can in no way be called upon to account for the mal-administration of his predecessor.

6. The weight of authority seems to hold that the representative of a former administrator could not be called on, by the administrator *de bonis non* of the first intestate, for the proceeds of property converted into money in the hands of the administrator of the first intestate, at such administrator's death; but only for assets existing in specie.

7. A general demurrer to a bill, on the ground of multifariousness, which is not sustained as to the only part which makes it multifarious, will be overruled.

The defendants filed a general demurrer to the bill of the complainant, and upon this the cause was set down for argument.

*Mr. I. W. Scudder,* in support of the demurrer.

The bill was filed March 14th, 1868. To this bill, David Lockwood and Isabella his wife have filed a demurrer. The following points are presented by the defendants, in support of their demurrer.

I. The proper remedy for the complainant, is by citing David Lockwood to account before the surrogate of the city of New York.

The estate of Joseph Brownlee, now deceased, was in the city of New York. Joseph Brownlee, in his lifetime, resided in the city of New York. No letters of guardianship or administration were, at any time, taken out in the state of New Jersey.

On the 23d of July, 1862, letters of administration were granted by the surrogate of the city of New York to David Lockwood, as administrator of Joseph Brownlee's estate; he gave security—two sureties, each in the amount of $2400.

The house and lot in Jersey City, which Isabella Lockwood inherited from Abigail Brownlee, cannot be the subject of a lien for the mal-administration, as alleged, of Abigail Brownlee. On the 23d of November, 1853, letters of administration were granted to Abigail Brownlee, on the estate of her husband. After fourteen years, three months, and twenty-one days, a bill was filed to reach the proceeds of such administration, seeking to establish a lien on a house and lot at Jersey City, New Jersey, in the possession of the heir-at-law. The property has passed by descent.

The Court of Chancery of New Jersey, will not take charge of, or enforce the administration of an administrator, whose letters were granted in the state of New York, and in a case where the intestate resided in the state of New York, and died there, for these, among other reasons—1. The next of kin must

be determined by the laws of the state of New York. 2. The debts must be proved in the state of New York, and paid according to the order of priority in that state. 3. The administrator, upon citation, is bound to account in New York, and the decree of the state of New Jersey will not aid or protect him. *Story on Conflict of Laws*, § 499.

The rights and powers of guardians are considered as strictly local, and not as entitling them to exercise any authority over the persons or personal property of their wards in other states, upon the same general principle and policy which have circumscribed the rights and authorities of executors and administrators. *Morrell* v. *Dickey*, 1 *Johns. C. R.* 153 ; *Kraft* v. *Wickey*, 4 *Gill & Johns.* 332.

There is no question whatsoever, that according to the doctrine of the common law, the rights of foreign guardians are not admitted over immovable property, situate in other countries. These rights are deemed to be strictly territorial, and are not recognized as having any influence upon such property in other countries, whose systems of jurisprudence embrace different regulations and require different duties and arrangements. No one has ever supposed that a guardian appointed in any one state of this Union, had any right to receive the profits or assume the possession of the real estate of his ward in any other state, without having received a due appointment from the proper tribunals of the state where it is situate. The case falls within the well known principle, that the rights to real property can be acquired, changed, or lost, according to the law *rei sitæ*. *Story on Conflict of Laws*, § 504 *a*. The same rule is applied by the common law to moveable property, and has been fully recognized both in England and in America. No foreign guardian can, *virtute officii*, exercise any rights or powers or functions over the moveable property of his ward, which is. situated in a different state or country from that in which he has obtained his letters of guardianship. But he must. obtain new letters of guardianship from the local tribunals.

authorized to grant the same, before he can exercise any rights, powers, or functions over the same.

Can the action for money had and received by the New York administrator, be maintained against such administrator in New Jersey? He is an administrator for the creditors, and next of kin. Who and to what amount are the creditors? What were the expenses of the administration? Can any thing be fixed or ascertained until the account has been filed in New York, and a decree of distribution there made? Can the Court of Chancery of New Jersey perform the duties of the surrogate of the city in New York?

The complainant does not propose to make the creditors and next of kin parties. Suppose the Court of Chancery of the state of New Jersey should attempt to follow funds alleged to have been brought into the state of New Jersey by the New York administrator, which funds are charged to have been invested in lands in New Jersey, and the administrator should be cited to account, and should render an account in the state of New York, would the decree of the Court of Chancery of New Jersey be any protection to the administrator? *Story on Conflict of Laws*, § 512. In regard to the title of executors and administrators, derived from a grant of administration in the country of the domicil of the deceased, it is to be considered that the title cannot, *de jure*, extend as a matter of right beyond the territory of the government which granted it, and the movable property therein. *Ibid.*, § 513. It has become a general doctrine of the common law, recognized both in England and America, that no suit can be brought or maintained by any executor or administrator, or against any executor or administrator, in his official capacity, in the courts of any other country except that from which he derives his authority in virtue of the probate and letters of administration there granted. So, on the other hand, if a creditor wishes a suit brought in any foreign country, in order to reach the effects of a deceased testator or intestate, situated therein, it will be necessary that letters of administration should there be taken out

in due form, according to the local law, before the suit can be maintained; for the executor or administrator appointed in another country, is not suable there, and has no positive right to or authority over these assets; neither is he responsible therefor. *Note to* § 513. The Supreme Court of the United States, in *Vaughn* v. *Northup,* 15 *Peters* 1, decided against the doctrine that a foreign administrator might be sued in another state for an account of assets received under the foreign administration. *Bond* v. *Graham,* 1 *Hare* 482; *Price* v. *Dewhurst,* 4 *Myl. & C.* 76, 80; *Preston* v. *Lord Melville,* 8 *Clark & Fin.* 12; *Vermilyea* v. *Beatty,* 6 *Barb.* 432; *Story on Confl. of Laws,* § 514, *note* 3.

If, after such administration shall have been completed, any *surplus* should remain, and it shall appear that there are trusts to be performed in Scotland, to which it was denoted by Sir Robert Preston, it will be for the Court of Chancery to consider whether such surplus ought or ought not to be paid to the pursuers for the purpose of being applied in the performance of such trusts; and in considering that question, every attention ought to be paid to the authority under which the pursuers have been appointed trustees, and the consent which led to such appointment. It is premature to decide that point, it being at present unascertained whether there will be any *surplus* of the personal estate in this country, or what will be the amount of it; and no declaration of right by the Court of Sessions would be binding upon the Court of Chancery under whose jurisdiction the property in England is placed by the suits which have been instituted. *Preston* v. *Lord Melville,* 8 *Clark & Fin.* 14.

But where such assets have been collected abroad under a foreign administration, and such administration is still open, there seems much difficulty in holding that the executor or administrator can be called upon to account for such assets under the domestic administration, unless, perhaps, under very peculiar circumstances since it would constitute no just bar to proceedings under the foreign administration in the courts of the foreign country. 1 *Story's Eq. Jur.,* § 583.

*Normand's Administrator* v. *Grognard*, 2 *C. E. Green* 426. James Normand died in Jersey City, February, 1863. He left personal property to the amount of $40,000. For several years prior to and at the time of his death, he resided in the the county of Hudson, where he died. The bulk of his property consisted of bank stocks and other funds in the state of Pennsylvania. The property in New Jersey amounted to $300. In April, 1863, letters of administration were granted in New Jersey and in Pennsylvania, to Edwin M. Lewis. The inventory in Pennsylvania included the property the *situs* of which was in that state. The inventory in New Jersey included, or was intended to include, the property here. On the 26th November, 1864, the Orphans Court of the county of Hudson ordered the administrator to file an inventory of the *whole estate*, and give security in the *whole* amount of the property, or that letters of administration be revoked. Neither the Orphans Court nor this court, has any right to require that the administrator shall bring the fund to which the next of kin may be entitled, from Pennsylvania to this state for distribution. In that respect the conduct of the administration must be controlled by the judicial tribunal of Pennsylvania. Nor can the court here anticipate what their decision may be. *Ibid.* 428.

The order was made not at the instance of a creditor, but of a party claiming to be the next of kin of the intestate. *Ibid.* 429.

The distribution of the fund must be regulated by the laws of the domicil of the intestate. *Ibid.* 428.

The case of *Banta* v. *Moore*, 2 *McCarter* 97, sustains every principle contended for.

II. Letters of administration on the estate of Abigail were never taken out, in any jurisdiction.

If Abigail Brownlee, as administratrix of Joseph Brownlee, had funds of that estate in her possession, which have been changed or converted; before those funds can be reached

an administrator should be appointed to take possession of the estate of Abigail.

The complainant is not a creditor. There may be creditors. The complainant claims as next of kin, and is entitled to a distributive share. Who but an administrator can ascertain the amount of such distributive share? How can a court say that property belongs to a next of kin, unless there be a decree of distribution? How can there be a decree of distribution, unless there is an administration?

III. The bill is multifarious.

The bill cannot be maintained, for the reason that it seeks to follow the funds of *two administrations*.

November 3d, 1853, Joseph Brownlee died intestate; November 23d, 1853, Abigail, his widow, administered; January 13th, 1862, Abigail died; July 23d, 1862, David Lockwood took out letters on the estate of Joseph Brownlee, in New York.

The effort by the bill is, first, to charge the lands which Abigail purchased in New Jersey, in the hands of the heir-at-law; and, secondly, to compel David Lockwood to account. If there be any equity, the grounds of equity are different. One equity is against lands descended. Another equity is against an administrator, to account. The widow would be entitled to her thirds. The decree of the surrogate in New York, in the settlement of the administration of Abigail, would be wholly different from that in the case of David Lockwood. *Story's Eq. Pl.*, §§ 271 to 278. Under this bill, nobody could tell how to direct the testimony.

IV. There is no ground whatever for the injunction.

The lands at the corner of Wayne and Varick streets were purchased by Abigail Brownlee, of Calvin Leach, and a deed made to her. She died seized of this property, and the same descended to the defendant, Isabella Lockwood, her sister and heir-at-law. The complainant has no legal lien whatever against these lands.

x *

*Mr. Gilchrist,* Attorney-General, contra.

It is proper to premise that this bill was not filed, and will not be attempted to be sustained, on any principle inconsistent with the recent cases of *Moore* v. *Banta,* 2 *McCarter* 97, and *Normand's Adm'r* v. *Grognard,* 2 *C. E. Green* 425. If any one prayer of the bill claims more extensive relief than that to which the complainant is entitled, as *cestui que trust,* against the defendants, as *trustees* of real estate, it is because we suppose the complainant entitled to claim the benefit of the rule, that equity will not do justice by halves. But if we rely too confidently on the application of this doctrine to this case, and the court can yet give relief to the complainant, as *cestui que trust,* against the defendants, as *trustees* of real estate, then the demurrer must be overruled, as too broad. Can the court give the relief against defendants, as trustees?

In one of those New Jersey cases, just above mentioned, the absolute right of the administrator of the domicil to all the assets, wherever situate; and in the other, the absolute obligation of the administrator of the domicil to get in and give security, in the forum of the domicil, for all assets, wherever situate, was attempted to be maintained.

Nor will it be necessary to impugn the authority of *Vaughn* v. *Northup,* 15 *Peters* 1, in which it was held that the *next* of kin of an intestate, domiciled in Kentucky, could not file a bill for account against a Kentucky administrator in the District of Columbia, for assets received in the District; nor any of those numerous cases which hold that an asset collected in one state, under its authority, will not be an *asset* in another state, as was held in *Fay* v. *Haven,* 3 *Metc.* 114; *Peck* v. *Mead,* 2 *Wend.* 471; *Orcutt* v. *Orms,* 3 *Paige* 465; *Harrison* v. *Sterry,* 5 *Cranch* 289; *Smith* v. *Bank,* 5 *Peters* 523; *Vaughn* v. *Barrett,* 5 *Vt.* 333; *Churchill* v. *Boyden,* 17 *Vt.* 319.

Nor will it be necessary to contest the case of *Currie* v. *Bircham,* 1 *Dowl. & Ry.* 35, in which it was held that an India administratrix, who remitted deceased's assets to Eng-

land in money, retained title as *owner* by virtue of her foreign letters, and could sue for them as owner; nor the case of *Preston* v. *Lord Melville,* 8 *Clark & Finelley* 1, in which it was held that the administrator of the domicil could not call the property out of the hands of an administrator *rei sitœ.*

None of the questions settled in these cases, arise under this bill. This bill may be sustained, and all of the above cases stand. The cases above stated, and those cited by the defendant, it may be admitted, establish these points: 1. That an administrator of the domicil can have no claim for an account of the assets of the same intestate disposed of by any other administrator, under authority properly obtained from a foreign jurisdiction. 2. That the next of kin cannot call to account, in one jurisdiction, an administrator appointed in another. And, 3. That to obtain relief in equity against a foreign administrator, a representative of the intestate, appointed in the forum where relief is sought, is a necessary party. The case in hand, though it is a bill by next of kin, complainant, against an administrator, defendant, is not within the first or second point, because the defendant, though an administrator *de bonis non,* is also a husband of an *heir* to the deceased *trustee* of the complainant.

As to the third point, no case is stronger than *Tyler* v. *Bell,* 2 *Mylne & Craig* 89, cited in Story's Conflict of Laws, § 513. It is a case not unlike the present, but in one feature there was a great difference; there was *no* allegation in the bill (which was demurred to,) that the administrator had *converted* the property sought to be reached. Lord Chancellor Cottenham, at page 106, says : " The bill alleges that Mr. Tyler, a husband of an administrator abroad, became a *trustee* for the plaintiff, but no facts are stated to justify this statement. No *conversion* of the rupees is stated, &c.; but the whole of it is *treated as part of the estate* of M. M. M." He then holds that an administrator, in *England,* of M. M. M., is a necessary party to the suit. By the law of New Jersey, as laid down in *Banta* v. *Moore,* and *Normand's*

*Adm'r* v. *Grognard*, an administrator here, being made a party, would not add to the jurisdiction of our court. In fact, as we proceed against the *heir* of the deceased, the administrator is no more a necessary party, than the personal representative in foreclosure cases against the *heir*.

Lord Cottenham, two months after his decision in *Tyler* v. *Bell*, was required to consider the question when an executor *ceased* to be *such*, and became *trustee*. This was in the case of *Phillipo* v. *Munnings*, 2 *Mylne & Craig* 314. It was a bill against an executor of an executor, to obtain the payment of £400, bequeathed to the first executor, to pay over to a legatee. An act of parliament limited suits for *legacies* to a certain time. It was said this was a suit for a *legacy*. Lord Cottenham said: " A man," (*i. e.* the second executor,) who, " being in possession of a fund which he knows to be not his own, thinks proper to sell it, and apply the produce to his own use, certainly does not come before the court under circumstances which entitle him to much indulgence.".

He ·then declares that the suit was not for a *legacy;* that the fund had ceased to bear the character of a legacy; that the suit was for a breach of trust, the second executor having sold the securities in which the first executor had invested the money, and re-invested the proceeds in his own name; that the suit must be considered, not as a suit for a legacy, but as a suit to compel a party to *account for a breach of trust*, and therefore the act limiting suits for *legacies* did not apply to the suit. *Ibid.* 311, 314, 315, marginal pages.

These last two cases show the effect of a *conversion* of the fund, or of an investment of it in the name of the executor, as an individual, upon his *status*.

Vice Chancellor Wigram recognizes the same doctrine, that the fund may lose its character of a fund to ·be administered, and the executor his character of executor, in *Bond* v. *Graham*, 1 *Hare* 484; though, in that case, he thought neither the fund nor the executor had lost the original character. He said it was not conclusive that the fund had *not*

lost its character of an unadministered asset, and taken upon itself the character of a *trust* fund, merely because it remained in the hands of the executor, though he said that made it more difficult of proof.    *Bond* v. *Graham* is the first case cited in *Story's Conflict of Laws*, § 513, for the *general* doctrine that a foreign administrator cannot be called to account out of his jurisdiction.

The case of *McNamara* v. *Dwyer*, in 7 *Paige* 240, may have been properly disregarded as an authority, by Story, (*Conflict of Laws*, § 513, note,) because there the foreign administrator had simply passed through New York with the assets, gone to New Orleans, and *there* misappropriated the assets for which he was sought to be held accountable in New York.

*Brown* v. *Brown*, 4 *Edw. C. R.* 346, while holding that the *general* rule is, that a foreign administrator cannot be called to account by the next of kin, admits there are cases where the court will lay their hands on an administrator; and one of them is stated to be where a foreign administrator brings *here* the asset, and is wrongfully engaged in applying it to his own use.    So, the court say, that the party must " pursue his remedy according to the *lex fori* of Rhode Island, *unless*, indeed, he could show, that by some act of the defendants in removing the property from that jurisdiction, any remedy which he might undertake to pursue there would be fruitless."    *Ibid.* 337.

Would not any remedy we might take in New York to reach the *New Jersey land*, and the profits and appreciation thereof—in which the plaintiff's father's personal assets were invested by the foreign administrator—be fruitless; all the parties residing in New Jersey, as they do?

Courts are reluctant to attempt to enforce liens in a foreign territory.    27 *Beav.* 246.    *Gulick* v. *Gulick*, 33 *Barbour* 92, goes as far, and indeed much farther than the case of *McNamara* v. *Dwyer*, 7 *Paige*.    So also does *Ordronaux* v. *Helie*, 3 *Sandf. C. R.* 518.

The doctrine that the foreign executor may so deal with

the fund as to lose the benefit of his foreign character, is approved by Westlake. *International Law, p.* 288, note *d.*

Story, (*Conflict of Laws,* § 523,) says: " The principle is strict that a foreign administrator cannot do *any* act as administrator in another state ;" and then illustrates it by examples. Surely, a foreign administrator cannot invest the assets of his intestate in real estate in New Jersey, and defy our courts to reach the *real estate* as such. I do not see how an administrator *appointed here* could claim the *land* which had been purchased by the foreign asset; it is only the next of kin that can make such a claim.

The administrator appointed here could not claim *land* as coming under his authority, though purchased by the foreign administrator with the assets of the foreign intestate; this is the case of an infant, which is always peculiar. 1 *Story's Eq. Jur.,* § 511.

That an executor or administrator may be trustee in such a case as this, there can be no doubt. *Shaver* v. *Shaver, Saxton* 437. The bill alleges the payment of all debts of complainant's father; that there is a right to relief against the land purchased with the assets of complainant's father, or to a lien for the amount, is clear. *Hovenden on Frauds* 435, 442; *Steele* v. *Babcock,* 1 *Hill* 527 ; 1 *Story's Eq. Jur.,* §§ 581, note, 593, 596, 322, 423.

As the courts of this state have undoubted jurisdiction, upon these principles, against the *heir* of the foreign administratix, inheriting the said land in this jurisdiction, to have it declared to be held in trust for the next of kin ; so I think there are sufficient allegations in the bill to hold liable here, the *husband* of the *heir* who happens to be also the administrator *de bonis non* appointed in a foreign jurisdiction, as receiver of the *rents* of this same real estate, the legal title to which descended to his wife. He is responsible for them as trustee, no matter what his foreign character may be. But he jointly, with the original administratrix, secreted $1500 of complainant's father's estate, years before he was administrator *de bonis non,* and caused it to be de-

posited, years before his appointment, in the name of a third party, and finally spent it on this very real estate.

The court will not do justice by halves. This administrator *de bonis non* being liable to account as a trustee for his own acts last stated, should account for everything. *Van Meter* v. *Jones*, 2 *Green's C. R.* 520. That was a case where a party was required to account in every capacity. The title of the complainant as *one* of the next of kin is a several right; it is not a joint right which can be enforced by two of the next of kin. To join all the next of kin would make a misjoinder; though the court *did* in *Burnham* v. *Dalling*, 1 *C. E. Green* 310, permit a conditional consolidation of the suits, but provided that if it became inconvenient, they should again become separate.

It seems to me that the demurrer is not well taken. If well taken in any part (which I do not admit,) it is too broad; as there is a large field for the jurisdiction of the court, irrespective of the doctrine of equity that once having jurisdiction of the parties, and one subject matter, it will not turn the party round and send him to law for a part of the relief to which he is fairly entitled, although he might have no right to go into equity for that part alone.

*Mr. Scudder*, in reply.

The complainant insists that he is entitled to relief against the defendants, as trustees of real estate.

No such principle can be invoked until after the account of the administration shall have been settled in the proper tribunal, and it shall then be shown that the administrator has assets in his hands which he declines to pay over. There must be a residuum ascertained in the proper tribunal. *Shaver* v. *Shaver*, *Saxton* 438. That proper tribunal is where the account should be rendered according to law. There is no surplus charged or stated.

No case can be found where an heir-at-law, who comes into possession of the estate of his ancestor by descent, can be declared a trustee, upon the charge that his ancestor was

an administrator in another state, and did not properly administer the assets of his intestate, and with such assets bought lands which descended to his heir.

Though the administratrix may be dead, her bonds stand. This appears by the evidence. This court can know that the testator left assets, only through the account of the administratrix.

If these defendants should answer this bill, and render an account as far as they could, of the two administrations, it would not prevent proceedings by creditors or parties interested, before the surrogate in the city of New York, to obtain an account there; and it would not save the bondsman of Abigail Brownlee from prosecution there. The charge that there are no creditors cannot give jurisdiction. *Shaver* v. *Shaver, Saxt.* 438.

It has been said to be a general rule, that the law never implies, and a court of equity never presumes a trust, except in cases of absolute necessity. 2 *Story's Eq. Jur.*, § 1195; *Cook* v. *Fountain*, 3 *Swanst.* 585, per Lord Nottingham.

The case of *Tyler* v. *Bell*, 2 *Myl. & C.* 89, supports the demurrer. It holds, that to a bill which seeks an account of the assets of an intestate, who died in India, possessed of a personal representative there, a personal representative of the estate constituted in England, is a necessary party. The merits of the case were never reached. The property as charged by the bill was personal property. It was not a case of the purchase of lands which had descended to the heir-at-law.

The case now before the court, is one in which the complainant attempts to fasten a lien on land, which has descended to the heir-at-law, upon the assertion that the ancestor, or person from whom the estate descended, was the administratrix in another jurisdiction, and converted the funds to her own use.

There must be some judgment at law, some decree of a surrogate, or other competent tribunal, establishing the unlawful conversion of the fund, before a court of equity will

enforce a lien on land, or declare the owner of the legal title a trustee.

This is not the case of a trustee bound to invest money in land, and where the court would follow the trust money into land purchased by the trustee, who had failed to declare the trust when he bought the land.

The administratrix had, as is said, a fund in the state of New York. She was authorized, as administratrix, to receive that money in New York. She gave bonds there, that she would pay the creditors of the intestate, and distribute the surplus among the next of kin.

This fund, if any, can only be got at through some administrator, the original administratrix being dead.

THE CHANCELLOR.

Joseph Brownlee, the father of the complainant, died at the city of New York, where he resided, November 3d, 1853, intestate. Administration of his estate, all of which was in that city, was granted to his widow, Abigail Brownlee, on the 23d of the same month. She took possession of his assets, and converted them all into money, except a leasehold estate in New York, of which she collected the rents until her death. In 1856, she purchased a lot in Jersey City with the money received, as administratrix, from the assets of the decedent, and built a house upon it, which was also paid for out of the assets of the decedent, she having no money except what she derived from his estate. The complainant was the son of the decedent, by a former wife, and was but a few years old at the death of his father; he had lived with and served his stepmother until he was nearly grown, and afterwards gave to her his earnings until he was almost of age, and was furnished with board and clothes by her, for which his services and wages were a full compensation; he left her in 1860, about two years before her death. She paid all the debts of his father, but never rendered any account of her administration, or paid to the complainant any part of the estate of his father. The personal estate received by her

greatly exceeded the debts of the decedent, and was expended in purchasing the lot in Jersey City, and building the house upon it. After purchasing this lot, she removed to Jersey City, and resided there until her death. She died on the 30th of January, 1862, intestate, leaving her sister, the defendant Isabella Lockwood, her only heir-at-law. In July, 1862, administration *de bonis non* of the estate of Joseph Brownlee was granted by the surrogate of New York to the defendant, David Lockwood, who resides in Jersey City, and who has since collected the rents of the leasehold property in New York; and he and his wife have, since the death of Abigail Brownlee, been in possession of the house and lot in Jersey City, and have received the rents. The complainant was the only issue of Joseph Brownlee, except one daughter, a twin sister of complainant, who has not been heard of by him for many years, and who is not known by him to be living. The complainant has no recollection of her; she was separated from the family, at an early age, and was adopted by a relative, with whom she afterwards lived. Her residence was in England.

The bill prays that the house and lot in Jersey City may be decreed to be held in trust for the complainant, as purchased with the residue of the estate of his father, which belonged to him, wholly, or in part, as next of kin; and that the defendants may account for the assets of Joseph Brownlee, received by Abigail Brownlee, as his administratrix; and that Lockwood may account for such assets as he has received. It does not appear that any one administered upon the personal estate of Abigail Brownlee, either here or in New York. These are the facts as stated in the bill, and for this argument, are to be taken as true.

An administrator of an intestate, who resided out of this state, by letters granted in the place of his domicil, for assets situate in that jurisdiction, cannot be called to account in the courts of this state. This position is settled by numerous cases, and is not disputed by the counsel of the complainant. So far, then, as the complainant calls upon the

defendants to account for the assets received by Abigail Brownlee, in her life, and upon David Lockwood to account for those received under his administration, he can have no relief in this court. The sureties of Abigail may be sued in New York, on her administration bond, if their liability is not barred by a statute of limitation; but whether they would be liable to the next of kin for distributive shares, if not decreed by the proper court, depends upon the provisions of the laws of New York, which are not shown in this cause. She rendered no account in New York, and as she has no personal representative there, or elsewhere, so far as appears in this cause, it may be impossible to procure an account in the proper court. But this, if shown to be the situation of the case, would not give to the courts of this state the right to call her personal representative, and much less her heir-at-law, to account here for the administration of the estate.

The defendant, David Lockwood, can be made to account in the proper courts of New York, and of course is clearly within the rule, and cannot be called to account here.

If such accounting was the only relief sought, the demurrer would be sustained; but the bill alleges that Abigail Brownlee purchased the lot in Jersey City with the assets of the estate in her hands, after the payment of the debts of her intestate. This was the surplus of his estate, and by law belonged to his next of kin, of whom the complainant was one, and it was held by her in trust for them. It was not the less held in trust because she had not yet accounted, or because no decree of distribution was made; the next of kin might not until then have been entitled to maintain a suit for it, or compel her to pay it over; but it was held by her in trust, like all money held by trustees, which is not payable to the *cestui que trust* until a certain time, or until a contingency which has not yet happened, and as such it is subject to the law of trusts. One principle of this law is, that if the trustee convert the money to his own use, and purchase property with it in his own name, such property is held in trust at the election of the *cestui que trust*, who is

entitled to take the property if it has increased in value, or to call for an account of the trust money so misapplied. If it be true, as alleged in the bill, that this property was purchased with the assets of the decedent, she held it as trustee for the next of kin; and the defendant, Isabella Lockwood, to whom it descended, holds it in like trust. To ascertain the fact whether this property was purchased with money of the estate of Joseph Brownlee, it may be necessary to investigate the accounts of his administratrix. But this is not *calling her to account* here, in the sense of the term in which such account cannot be called for in another jurisdiction than that where administration was granted. The accounting in this case is not for the purpose of settling the account, or making a decree of distribution, for which this court has no jurisdiction, but for the purpose of ascertaining whether real property in this state, over which this court has jurisdiction, and exclusive jurisdiction, so far as the title is concerned, is held in trust by one resident of this state for another resident.

There is no one before this court, who can be called to account for the administration of Abigail Brownlee, if the court had jurisdiction of the subject matter. She has no administrator, and the administrator *de bonis non* of her husband is only responsible for such unadministered assets as he has received, and can in no way be called upon to account for the mal-administration of his predecessor. And the weight of authority on the subject seems to hold that he could not call on the representative of the former administrator for the proceeds of property converted into money in her hands at her death, but only for assets existing in specie. *Toller on Executors* 450, *note;* 2 *Williams on Ex'rs* 865, *note.*

The order made in the Ecclesiastical Court, *In the goods of Hall*, 1 *Haggard* 139, would seem to have an aspect to the contrary. But in that case the suit in the court of law was in the name of the Ordinary, and was for the benefit of the next of kin and creditors, and although it is stated that it

was brought by the administrator *de bonis non*, yet it clearly was not a suit by *him*, and does not establish the position that he could sustain a suit in his own name, or that the assets when recovered would be paid to him.

David Lockwood, as administrator, is not a party to this suit, nor is it necessary or proper that he should be a party, as such.

As the suit cannot be sustained for an account, either against the present administrator in New York, or for the administration of the first administrator, the ground of multifariousness urged on the argument, disappears under the ruling in *Emans* v. *Emans*, 1 *McCarter* 114, and in *Varick* v. *Smith*, 5 *Paige* 160, followed and approved in the decision in *Durling* v. *Hammar*, made at this term. To make multifariousness or misjoinder, there must be a combination of several distinct matters, on which relief could be granted in equity, if separate.

As the demurrer is to the whole bill, and is too broad to be sustained, it must be overruled, as was the result in *Banta* v. *Moore*, 2 *McCarter* 97.