## YOUMANS and others *vs.* YOUMANS and others.

1. Under a devise of twelve acres of woodland, parcel of a larger tract, the right of selection is in the devisee; and upon a conveyance thereof, before selection, the right passes to the grantee.

2. Under a general power to sell lands to pay debts, executors have no power to sell lands specifically devised, for the payment of debts due from such devisees to the testator, and which he directs to be taken from their respective shares, but which are not collectible, from want of property, except by the sale of such lands.

3. Under a general gift of the residue to children in equal shares, a direction that the debts due from certain children but taken from their shares, and a limitation of the shares of the sons to them and their wives for life, with remainder to their children in fee; the entire interest of the sons' shares,—the remainder, as well as the life estate,—is subject to the payment of the debts due from the sons, respectively.

4. In this case, the limitation of the sons' shares for life, is clearly in the whole of the residuary estate, and is not restricted to that part of the homestead farm only, which was given to the widow for life, by reason of a reference to the residuary estate as "the last mentioned property to be disposed of at the death of my widow." The death of the widow, in the residuary section, merely fixes the time of the division.

5. Where all the parties are before the court, under a bill filed by the executors for a construction of the will and for directions, the accounts may be settled here.

On final hearing, on pleadings and proofs.

*Mr. Joel Parker*, for complainants.

*Mr. R. Allen* and *Mr. W. H. Vredenburgh*, for defendants.

THE CHANCELLOR.

Henry Youmans, late of the county of Monmouth, by his will devised, bequeathed, and directed as follows :

"It is my will, and I do order that all my just debts and funeral expenses be duly paid and satisfied, as soon as conveniently can be after my decease.

"I hereby authorize, empower, and direct my executors, hereafter named, to sell as much of my estate, both personal and real, either at public or private sale, to pay debts, funeral expenses, and settling of my estate.

"I give and bequeath to my beloved wife the east part of the farm, from a stake in the Wardell line to a stake in the Truax line, with the buildings, all the furniture in the house, two cows, two hogs, and poultry ; to have the use of it as long as she lives.

"I give and bequeath to my beloved wife, twelve acres of woodland, being in the township of Ocean, county of Monmouth, State of New Jersey, near Deal, to belong to her, and to dispose of as she sees proper ; to sell and to make a title for the same.

"I give and bequeath to my son, Jeremiah Youmans, and his wife, Lydia Ann, as long as they both shall live, and

then to descend equally to his children, to dispose of as they shall think proper, a certain tract of land situated in the township of Atlantic, county of Monmouth, State of New Jersey; the same tract was sold by Eleanor A. Marvis, late Eleanor A. Rodgers, administrator of John Rodgers, deceased, to Abraham H. Morris.

" I give and bequeath unto my son, James Youmans, and his wife, Mary Francis, all that certain lot or parcel of land and premises situate in the township of Ocean, county of Monmouth, State of New Jersey, containing six acres of land on the east side of the road leading from the Methodist Church at Shark river, to the road leading to Layton's corner, being the same as was conveyed by James Youmans to me, Henry Youmans; to have the use of as long as they both live, and then to descend equally to his children, to dispose of as they think proper.

" After the death of my widow, the balance of my real and personal estate to be equally divided between my eight children, share and share alike; my sons, Jonathan Youmans, Jeremiah Youmans, Curtis Youmans, and James Youmans; my daughters, Rebecca Morris, Hannah Stout, Mary Margaret Mason, and Martha Jane White.

" The debts of my heirs, lawfully due me, if not paid before my death, to be taken from their respective shares; Curtis Youmans, two hundred and three dollars and seventy-five cents; James Youmans, one thousand and forty-nine dollars and eighty-eight cents; Hannah Stout, one hundred and fifty dollars, for wood on the ground.

" The last mentioned property to be disposed of at the death of my widow, to be entailed in the following manner:

" The share of Jeremiah Youmans and his wife, Lydia Ann Youmans, to have the use of it as long as they live, and then to descend equally to his children, to dispose of as they think proper.

" The share of Curtis Youmans and his wife, Anna Youmans, to have the use of it as long as they live, and then to

descend equally to his children, to dispose of as they think proper.

" The share of James Youmans and his wife, Mary F. Youmans, to have the use of it as long as they live, and then to descend equally to his children, to dispose of as they think proper."

The personal estate of the testator, which has come to the hands of the executors, has been exhausted in paying the debts.

The debts mentioned in the will as being due to the testator from his children, Jeremiah, Curtis, James, and Hannah, were unpaid at his death, and still remain so. They are not collectible, except by sale of the lands devised to the debtors by the will; they having no other property. The twelve acres of woodland devised to the testator's widow, was not a separate tract. The devise was, in fact, twelve acres out of a tract of forty-one acres. The twelve acres have not been selected by or set apart to the widow, nor to or by her grantee, her daughter, to whom she sold and conveyed them.

The executors file their bill for a construction of the will, and for directions: and the questions presented are, first, as to the mode in which the twelve acres shall be designated and set off to the grantee of the widow; second, whether the executors, under the power given to them in the will to sell land for the payment of debts, may sell the land of the delinquent devisees in order to realize the debts due from those devisees; third, whether the entire estate, as well as the remainder, as the life estate of the sons of the testator and their respective wives, in the lands devised to them respectively, or the life estate only of the sons, is liable to be sold to pay the debts due from the sons respectively; fourth, whether the limitations for life to the sons, respectively, in the property by the will directed to be disposed of at the death of the testator's widow, attaches to their shares of the whole of the residuary real estate, or only to so much of it as was given to the testator's widow for her life; and, fifth, whether the accounts of the executors may not be settled in this court.

The grantee of the widow has the right to select the twelve acres, devised to the latter out of the tract of forty-one acres. *Vin. Abr., Vol.* 8, *p.* 48, *pl.* 11. *Lore* v. *Stiles,* 10 *C. E. Green,* 381.

The executors, under the power to sell to pay the debts of the testator, have no power to sell the land of the delinquent devisees for the payment of their debts to the estate.

The testator intended that the provision made in the will for his sons and their families should be subject to the payment of the debts which, at his death, should remain due from his sons. The direction is that those debts be " taken out of the respective shares " of his sons. It is suggested that from this the conclusion may be drawn, that he intended to subject the interest of the sons only, and not those of their wives and children, to the payment of the debts. The language of the gift of the residue is some guide to the testator's intention on this score. He gives the residue to his eight children, by name, in equal shares. Then follows the clause directing that the debts be taken from the shares; and that is followed by the limitation of the shares of the sons to them and their wives for life, with remainder to their children, in fee. The word " shares," in the section requiring payment of the debts, undoubtedly covers the entire interest of the sons and their respective families in the residue. Nor is the direction for the payment of the debts out of the shares, limited to the shares of the sons in the residue. There is no evidence of any intention to make such limitation. On the other hand, it seems manifest that the testator meant by the word " shares," as applied to his sons in the section requiring payment of the debts, the entire provision made by the will for them and their families.

In the limitation of the shares of his sons in the property given by the residuary section, that property is referred to as " the last mentioned property to be disposed of at the death of the widow." From this reference the question has arisen, whether the property to which the limitation thereby made attaches, is not that part of the homestead farm only, which

was given to the widow for life. The residuary section embraces all the property not specifically devised, and the words "after the death of my widow," in that section, have reference only to the time of division. The section of limitation extends to, and includes all the property given to the sons by the residuary section of the will.

The evidence taken in the cause shows that the debts mentioned in the will as being due from the sons and Hannah are still unpaid, and it further appears that none of these persons has any property out of which the debts can be collected, except the property devised by the will.

There will be a decree in accordance with the views above expressed, directing, however, that the homestead property be first sold to raise and pay out of the respective shares of the sons, as above declared, and Hannah therein, the amount of their respective debts.

The executors may settle their accounts in this court. *Mallory* v. *Craige*, 2 *McCarter* 73.