Margaret G. Harris (formerly Margaret Creech) died testate October 25th 1937. Her last will and testament and a codicil were duly proved before the surrogate of Camden County December 8th, 1937, and letters testamentary were issued to George Creech, a son of the decedent and the person named as executor in the will. At the time of her death the testatrix was possessed of some personal property and was the owner, in fee-simple, of seven parcels of real estate situate in New Jersey. George Creech, the executor, undertook the *Page 274 
administration of his mother's estate; he also assumed control over her real estate, collecting the rents and profits and paying the charges and expenses.
The complainants William Creech, Catherine Cheeseman, and Emma Garrity are also children of the testatrix. They did not, until about June, 1941, question the right of the executor to control their mother's real estate and, in the interim, he submitted to them several informal statements of account. Those statements were not audited or proved, nor were vouchers submitted, and the complainants, it appears, have never signified their approval or disapproval of the transactions therein disclosed.
George Creech died May 5th, 1942, without having completed the administration of his mother's estate, and without having formally and completely accounted for receipts had and disbursements made. At the time of his death George Creech was a resident of Saylorsburg, Monroe County, Pennsylvania. No personal representative has been appointed to administer his estate. January 18th, 1943, his brother, William Creech, was appointed administrator in his place and, having qualified, took over possession of the decedent's real estate and began to collect the rents.
Complainants charge in their bill that George Creech mingled the moneys that came into his hands as executor and those he collected as rents with his own funds. William Creech, as soon as he was appointed administrator cum testamento annexo, served notice upon Ada Creech, the widow of George Creech, demanding payment to him of all moneys of the estate of Margaret G. Harris which were received by George Creech or collected by him from the real estate of which Margaret G. Harris died seized. George Creech was survived only by his said widow, and a daughter Eleanor.
The complainants pray a construction of the will and codicil of Margaret G. Harris, a partition of the lands of which she died seized, and that the share or interest of George Creech therein be charged with such moneys as may be found to have been taken into his possession from the lands or as personalty of his mother. Complainants further pray that this court take over the administration of her estate and direct *Page 275 
that an accounting he had of the rents, issues and profits received by George Creech and William Creech from the personalty or the real estate of their mother. All of the answering parties have approved of a partition by sale of the several parcels of real estate, it being asserted or conceded that there could not be a fair and proper physical division thereof.
Does the codicil have the effect, by implication, of revokingthe bequest made in the will to Ida Van Fossen?
The will is a legalistic instrument, giving every evidence that it was carefully prepared by competent counsel. The codicil is poorly punctuated and contains many mispelled words; it appears to have been home-made. It contains no reference whatever to three paragraphs of the will; the first, which directs payment of debts and funeral expenses, the second, which specifically bequeaths $500 to Mrs. Van Fossen, and the fourth, which appoints an executor and directs that he be not required to give bond. The third paragraph of the will provides for the distribution of decedent's residuary estate to five children, share and share alike.
The contention that the bequest to Mrs. Van Fossen was revoked by implication rests upon the employment of the word "any" in the codicil. The codicil reads:
 "Gloucester City November 19th 1934
I Mrs Margaret Harris being sound and disposing mind and memory, Chang my last will and testiment as follows: All my liveing children named herein to share equaly any cash or real estate left at my death.
George Creech, Mrs Matha McVaugh, William Creech, Mrs Catherine Cheeseman, and Mrs Emma Garriaty. Mrs Emma Garriaty to receive intrest only on her share cash and property as long as her husband Albert Garriaty lives. At his death she is to receive her full share and equal share of cash and property bequeathed to her.
At her death all cash and property left to be equaly divided among her children then liveing
In witness hereof, I have hereunto set my hand and signed,
 her MARGARET X HARRIS mark
Witness
 MRS MARY CHEESEMAN WILLIAM. B CHEESEMAN SR." *Page 276 
Emma Garrity was not named as a beneficiary in the will. Apparently, after the will was executed the testatrix, for some reason, came to the conclusion that she should include her daughter Emma in providing for the distribution of her residuary estate. Also, that she should preclude, if possible, Albert Garrity, the husband of Emma, from receiving any direct benefit from the estate. She therefore drafted or had someone draft for her the codicil which is before the court. Complainants argue that when the testatrix declared in the later instrument that all of her designated children living at the time of her death were to share equally in "any" cash or real estate left she, by implication, revoked her specific bequest to Mrs. Van Fossen.
"Whether a codicil operates as a revocation of a will where the codicil contains no express clause of revocation, but is claimed to be inconsistent with the provisions of the will, depends primarily upon the intention of the testator. A codicil differsfrom a later will in that it is not, prima facie, a revocation ofthe earlier will, but rather a republication or confirmation withalterations. * * * The courts are opposed to assuming that a codicil revokes a will by being inconsistent therewith. A codicil does not revoke a will unless testator's intention so to revoke is clear, and there must be an absolute, clear and irreconcilable inconsistency between the will and the codicil in order that the codicil may revoke the will by being inconsistent therewith. His intention to revoke must either be expressed or necessarily implied from the terms of the codicil. * * * The codicil will be held to revoke the will only when necessary to give effect to the provisions of the codicil." (Italics supplied.) Page on Wills
(Lifetime ed.) 841 § 466.
"A vague or indefinite provision in a codicil cannot revoke a definite provision in the will. If the will clearly gives an estate, the codicil must be equally clear in order to revoke such gift." Ibid. (at p. 846).
Vice-Chancellor Buchanan, in Thomas v. Scheible, 91 N.J. Eq. 451,457; 111 Atl. Rep. 519, pointed out that in construing a will and a codicil, "`* * * it is an established rule not to disturb the dispositions of the will further than *Page 277 
is absolutely necessary for the purpose of giving effect to the codicil.' * * * In order, therefore, to justify a court in determining that any provision of a will is altered or revoked by a codicil, it must be quite clear that such was the testator's intention."
Our Court of Errors and Appeals, in the case of Estate ofCharles G. Diament, 88 N.J. Eq. 552, 553; 103 Atl. Rep. 199,
declared, "A codicil is so far from being a revocation of any existing will and codicils that it is a republication thereof except as altered * * *."
The only hesitancy that one might have in so construing the will and codicil which are now before the court as to require a decree sustaining the bequest to Mrs. Van Fossen and directing that the distribution among children of the testatrix apply to the residue after payment of this specific bequest, would be suggested in the use, by the testatrix, in her codicil, of the words "all my liveing children named herein to share equaly any cash or real estate left at my death," and particularly the word "any." That the testatrix understood and appreciated the difference between the words "any" and "all" is certain. She used both words in her codicil. Having permitted her bequest to Mrs. Van Fossen to stand, she directed that "any cash or real estateleft" at her death should be distributed among her children. (Italics supplied.) But, expressing an intent to create a remainder in the children of her daughter Emma Garrity, she said that at Mrs. Garrity's death "all" cash and property remaining was to be equally divided among her then living children.
It is quite evident that the testatrix, in creating the codicil, intended it as a substitute for the third paragraph of her will. Obviously she had come to wish to entirely exclude the husband of her daughter Emma from any direct benefit from her estate. She expressed this intent by directing that Mrs. Garrity receive only the interest on her share in the estate so long as her husband lived, and that, at his death, she receive "her full share and equal share of cash and property bequeathed to her."
This statement suggests another recognized principle of construction declared by Vice-Chancellor Reed in Lyon v. *Page 278 Clawson, 56 N.J. Eq. 642, 645; 39 Atl. Rep. 1064; affirmed,58 N.J. Eq. 584; 43 Atl. Rep. 1098, "`A gift in addition to or in lieu of a previous gift to the same legatee, is subject to the same conditions as the previous gift, with respect to vesting, separate estate, the fund out of which it is payable, freedom from legacy duty and provisions against lapsing.'" (Italics mine.) Thus, in the case at bar, the substitutionary gift to children, as a class, provided for in the codicil, should be construed as a gift out of the "same fund" from which the gift to children as a class was payable under the will. That is, out of the residue after payment of debts and funeral expenses and the bequest to Mrs. Van Fossen.
Still a further rule of construction has been adverted to by counsel; that where two clauses of a will (or of a will and a codicil) are so irreconcilable that they cannot possibly stand together, the clause which is last in position shall prevail. But, it is now entirely settled that this rule is never to be applied except on the failure of every attempt to give the whole will such a construction as will render every part of it effective. 2 Jarm., Wills (R. T. ed.) 48.
I am convinced that despite the fact the testatrix used the word "any" in providing for distribution of her property to her children, she did not intend thereby to revoke the first or the fourth paragraphs of her will, or the second paragraph bequeathing $500 to Mrs. Van Fossen. This finding of fact effectuates the same result arrived at by application of the rules of construction I have quoted and stated.
Bequest to Emma Garrity: Another question submitted to the court is: Was Emma Garrity, by the terms of the codicil, vested with an absolute interest in the residuary estate of the testatrix?
It is quite evident that the testatrix, or another, inexperienced in the drafting of wills, prepared the writing which, upon execution, became the codicil. I have already quoted the pertinent provision in full. Not only are words misspelled and proper punctuation lacking, but words and phrases employed are inaccurate. The fact that this codicil was drawn by a layman, uninformed in or unconcerned with fine, technical or legal distinction or rules of construction, is in itself a circumstance to be considered in construing this *Page 279 
paper-writing. Higgins v. Mispeth, 118 N.J. Eq. 575;180 Atl. Rep. 562. It is true that where the plan and intent of a testator is found to have been so inaptly and inaccurately expressed that one can only conjecture as to the testator's intent, resort may be had to the rule settled by the decisions of our courts that, where a testator has manifested an intent to vest an absolute fee-simple in the first taker, a subsequent limitation thereof is void as inconsistent with the rights of the first taker. Higgins v. Mispeth, supra (at p. 578 of the Equity Report). However, another general rule of construction is that words are, in all cases, to receive a construction which will give to every expression some effect, rather than one that will render any of the expressions inoperative. Swetland v.Swetland, 100 N.J. Eq. 196; 134 Atl. Rep. 822; affirmed,102 N.J. Eq. 294; 140 Atl. Rep. 279.
The meaning and intention of the testator must be determined, not by fixing the attention on single words in a will, but by considering the entire will and the surroundings of the testator when he executed it, and by ascribing to him, so far as his language permits, the common impulses of our nature. Coyle v.Donaldson (Court of Errors and Appeals), 91 N.J. Eq. 138;108 Atl. Rep. 308. It is also definitely settled that a devise of lands or bequest of chattels by words which clearly would give an absolute estate, will be construed into a devise or bequest for life only if (as here) the will contains words giving it to another upon the death of the first taker. Jones' Executors v.Stites (Court of Chancery), 19 N.J. Eq. 324; Higgins v.Mispeth, supra (at p. 581 of the Equity Report). The beneficiary under this clause, Emma Garrity, is a daughter of the testatrix. Vice-Chancellor Egan, in Higgins v. Mispeth, supra
(at p. 583 of the Equity Report), quoted the following: "`Except in an entirely plain case, the court will not construe a will so as to cut off from inheritance or benefit any direct descendant of a testator. * * *.'" Then followed this quotation from Dorsett v. Vought, 89 N.J. Law 303; 98 Atl. Rep. 248:
"`The rule is fundamental that, unless the intent of the testator to disinherit them be clear and palpable, the heirs-at-law will not be disinherited. Birdsall v. Applegate, 20 N.J. Law 244;Graydon v. Graydon, 25 N.J. Eq. 561; Woodruff v. White, *Page 280 78 N.J. Eq. 410; affirmed by this court in 79 N.J. Eq. 225;Areson v. Areson, 3 Den. 458.'"
With respect to the bequest to Mrs. Garrity, the intent of the testatrix is, I think, made manifest in her codicil. In her will she had directed the distribution of her residuary estate share and share alike to five of her children; she did not mention her daughter Emma Garrity. In the codicil it is clear that she intended to preclude any possibility that Albert Garrity, the husband of Emma, receive any direct benefit from the testatrix' estate. She named five of her children and directed that her estate be equally divided among them. She then specifically directed that her daughter Emma receive only the interest on her share so long as Albert Garrity lived; and, at his death, she receive the full share bequeathed to her. She added that at the death of Emma "all cash and property left to be equaly divided among her children then liveing."
Now, it seems to me quite obvious the testatrix would not have executed this codicil had she entertained any idea that by the application of rules of construction thereto a court would construe the instrument as making an outright gift of real and personal property to Emma Garrity. As I have said, I believe that this was the very result the testatrix planned to prevent. It is my conviction that the scrivener of the codicil, whether it was the testatrix or another person inexperienced in law, failed to aptly express the testatrix' intention to give to her daughter Emma Garrity an estate for the life of her husband, Albert Garrity, only, with remainder over to her or to her children living at the time of her death.
 Partition:
All of the parties seem to concede that a physical division of the lands of the decedent could not be logically and equitably effected, and that the lands should be sold and the proceeds distributed. Under the codicil the complainants William Creech and Catherine Cheeseman (formerly Catherine Emincker) and the defendants Martha McVaugh and the heirs of George Creech are tenants in common in the lands, in fee-simple, and each of them is entitled to invoke the right of partition. And, even though the share of Emma *Page 281 
Garrity is limited over to her children, partition is authorized under R.S. 2:71-66.
 Should the share or interest of which George Creech was seizedin his lifetime be charged with such moneys as may be found tohave been taken into his possession and retained by him from theestate of his mother?
George Creech died intestate in Saylorsburg, Pennsylvania, and no personal representative was ever appointed to administer his estate. Complainants, at one time were in doubt as to whether or not, under the provisions of R.S. 3:10-9, they should move to have a personal representative appointed. But, in Brownlee v.Lockwood, 20 N.J. Eq. 239, it was held that the personal representative of a deceased fiduciary is neither a proper nor a necessary party to a suit in this state seeking relief for a fiduciary's maladministration of his office, against lands located here, that the personal representative of a deceased fiduciary cannot be called to account for his maladministration, and that the accounts of such a delinquent fiduciary may be inquired into by this court to ascertain the extent of his shortages, if any. Since the decision in Cole v. Cole, 69 N.J. Eq. 3; 59 Atl. Rep. 895, there can be no doubt that, in a partition proceeding such as this, an accounting for rents and profits and a charging or surcharging of the share of a defaulting fiduciary is proper and may be had. The only question which may continue to exist is whether or not such right of accounting and charging may be extended to include the debt George Creech owes the estate of Margaret G. Harris. In Cole v.Cole, supra, counsel advanced the theory that the share of a co-tenant in partition might be surcharged for estate moneys administered but unaccounted for by a co-tenant. Chancellor Magie, criticizing this theory, pointed out the impossibility of giving relief because (1) the personal representative of the estate was not a party, and (2) the share of the co-tenant had been conveyed by way of gift to a stranger. The implication of that opinion is, however, that if those objections were not present, relief would have been proper. See, also, Buchanan v.Buchanan (Court of Errors and Appeals), 75 N.J. Eq. 274;71 Atl. Rep. 745. *Page 282 
In the case at bar the administrator cum testamento annexo of the decedent is not only a party, but he alleged he never received any of the estate assets administered by his predecessor in office. Then too, the share or interest of George Creech has not been conveyed by him or set off to him in partition. Certainly, if the dissipated assets of the estate are to be recovered at all they may be recovered only by charging the share of George Creech in this proceeding. The same thing is true of the admitted indebtedness of George Creech to the estate for rents taken. The failure of interested parties to have sought the appointment of a personal representative of George Creech gives credence to the suggestion that he left no estate other than his interest as a co-tenant in the lands sought to be partitioned in this cause. The heirs-at-law of George Creech should not be unjustly enriched at the expense of his co-tenants, either by reason of his maladministration of estate assets or by reason of his indebtedness resulting from the taking of rents to which he was not entitled.
 Administration of the estate:
At one stage in this proceeding it was suggested that the bill of the complainants was multifarious. I have carefully considered this phase of the case but I cannot see that the mere solicitation of this court to take over the administration of the estate constitutes a stating of another cause of action, and should result in a dismissal of the bill. While it is well settled that the jurisdiction of this court over accounts of fiduciaries is concurrent with the probate courts, it is equally well settled that this court will not exercise its jurisdiction except for special cause, and then only in conjunction with some other form of relief specially cognizable in Chancery. It has been my observation that the most common approach to a request that this court take over the administration of an estate is by including that request as incidental to other relief prayed for in a bill.
In the instant case, there are several noteworthy reasons why the accounting should be had here rather than in the Orphans Court. (a) Nothing has been done thus far in the Orphans Court; (b) In this court an account may logically be had inasmuch as it is charged and conceded that George Creech mingled estate funds and the rents of lands which are *Page 283 
here sought to be partitioned with his personal funds, and an accounting of the one cannot be had without an accounting of the other. This reason alone was held to have been sufficient to warrant this court in taking over jurisdiction in the case ofClarke v. Johnston, 10 N.J. Eq. 287, cited with approval by the Court of Errors and Appeals in Filley v. Van Dyke, 75 N.J. Eq. 571; 72 Atl. Rep. 943. (c) The former executor is indebted to decedent's estate and apparently never made any effort to meet his obligation. This reason, together with a charge of fraudulent compromise of claims was held in Nelson v. Errickson, 81 N.J. Eq. 226; 87 Atl. Rep. 116, to have been a sufficient reason for this court to assume jurisdiction. (d) All the parties are before this court. This reason alone was held to have been sufficient to warrant taking jurisdiction in the cases of Mallory's Adm'r v.Craige, 15 N.J. Eq. 73, a suit to discover estate assets;Youmans v. Youmans, 26 N.J. Eq. 149; Matthews v. Hoagland,48 N.J. Eq. 455; 21 Atl. Rep. 1054; and in Sampson v.Sampson, 96 N.J. Eq. 198; 124 Atl. Rep. 708, which was a suit for an accounting and the construction of a will. (e) The rights of infants are involved. This was one of the reasons given for assuming jurisdiction in Brown v. Fidelity Union Trust Co.,128 N.J. Eq. 197; 15 Atl. Rep. 2d 788. (f) Estate assets in the hands of a former fiduciary are missing. This was one of the reasons which impelled our Court of Errors and Appeals to reverse this court for refusing to take jurisdiction over an accounting in Filley v. Van Dyke, supra. Moreover, it would be impossible for the present administrator cum testamentoannexo to account for any funds except those collected by him. He could not be required to adopt, nor would he be likely to adopt, as his, the private, incomplete and unvouched account submitted by George Creech.
Under the circumstances recited, and for the reasons assigned, I shall advise the Chancellor to take jurisdiction of this entire estate matter. A special master will be appointed to take and state the account and, if it is found that the deceased executor was, at the time of his death, indebted to the estate of his decedent, a lien for such indebtedness will be impressed upon the debtor's interest in the lands of his decedent. *Page 284