MASON'S EXECUTORS *vs.* THE TRUSTEES OF THE METHODIST EPISCOPAL CHURCH AT TUCKERTON and others.

1. Where a bequest was made to a Sunday school connected with an incorporated church, the amount to be placed at interest on bond and mortgage so that it might receive annually the interest for the purpose of procuring books for said school, the court appointed the church corporation

trustee to receive the money bequeathed, on the trust declared in the bequest.

2. A bequest to A, B and C and their heirs, with direction that the money be invested, and the interest "be divided equally between them forever," is a gift to A, B and C as tenants in common, and there is, therefore, no survivorship. The fact that the gift is to them and their heirs, would not limit their interest in the fund to a life estate, unless there were a clear expression of intention that the gift to them should be only a life estate.

3. The gift of the produce of a fund, without limit as to time, or further disposition of the fund or interest, is a gift of the fund itself.

4. A bequest by codicil to a legatee named in the will, "in full" of all bequests to such legatee, *held* to be "in lieu" of such bequests.

5. Where, after a gift by his will to A, B and C, absolutely, the testator, by a codicil, gives to A a legacy in full of all bequests to him, thereby revoking the bequest to A of his share in the original gift, such revocation, and the fact that that share is not otherwise disposed of, will not give to B and C the entire fund; they will each be entitled to one-third of it only.

6. A gift to A and her children of "$1000, to be invested on bond and mortgage of real estate, and the interest to be collected and paid over to them annually, and equally divided between them," is a gift of the fund absolutely, and the legatees take as tenants in common in equal shares, the children each taking an equal share with their mother. They are entitled to be paid at once, notwithstanding the direction to invest.

7. A bequest to two townships of a fund to be invested on bond and mortgage for the use and benefit of the inhabitants of those townships, the interest to be divided between the townships in proportion to the number of inhabitants in each, for the purpose of educating their poor orphan children, and in case the interest should not all be consumed for this purpose, the balance to be appropriated annually to the poor widows of the township, is a charity which this court will sustain and effectuate.

8. The township corporations are not proper trustees of the fund. A trustee will be appointed by the court.

9. A gift of a fund to the New Jersey State Lunatic Asylum, the interest to be appropriated annually under the superintendence and direction of Dr. B., the superintendent of the institution, and his successors in office forever, for the purchase of books and papers for the benefit of the inmates, was directed to be paid to the treasurer of the institution.

———

Bill for construction of will.

*Mr. A. Browning,* for executors.

*Mr. H. A. Drake,* for legatees.

THE CHANCELLOR.

The bill seeks a construction of the will of Dr. William K. Mason, late of Tuckerton, in Burlington county. The will is dated March 16th, 1870. To it there are two codicils, one dated August 27th, 1872, and the other April 14th, 1874. The questions propounded arise upon the following items of the will and codicils: Eighth section of the will: "I give and bequeath to the Sunday school of the Methodist Episcopal Church at Tuckerton, the sum of $150 ; to the Sunday school of the Methodist Episcopal Church at Bass River, the sum of $100, and to the Sunday school of the Presbyterian Church at Tuckerton, the sum of $100, to be placed at interest under bond and mortgage, so as that they may each receive annually the interest accruing thereon, for the purpose of procuring books for the said school each and every year."

Tenth section of the will: "I give and bequeath to the children of my deceased sister, Mary Ann Cook, viz.: William Montgomery, Sarah Hyflinger and Mary Ann Wright, and their heirs, the sum of $800, to be invested on real estate, and secured by bond and mortgage, and the interest accruing thereon to be collected annually, and to be equally divided between them forever."

First item of the first codicil: "I do hereby give and bequeath unto William Montgomery, the son of my niece, Elizabeth Montgomery, deceased, my wearing apparel and $150 in cash, in full of all bequests to him."

Eleventh item of the will: "I give and bequeath to my sister, Sarah Whitaker, and her children, the sum of $1000, to be invested in real estate under bond and mortgage, and the interest to be collected and paid to them annually, and divided equally between them forever."

Fourth item of the second codicil: "I give and bequeath to my sister, Sarah Whitaker, the additional sum of $300, in addition to what I have already bequeathed to her."

Twelfth item of the will: "I give and bequeath to the townships of Little Egg Harbor and Bass River, in trust, the sum of $500, to be invested in real estate under bond and

mortgage, for the use and benefit of the inhabitants of said townships, and the interest to be collected annually, and divided between said townships in proportion to the number of inhabitants in each, for the purpose of educating their poor orphan children; and in case the same shall not all be consumed or used for this purpose, the balance of said interest so to be appropriated annually to the poor widows of said township."

Thirteenth item of the will: " I give and bequeath unto the New Jersey State. Lunatic Asylum, the sum of $500, to be invested in real estate under bond and mortgage, and the interest to be collected annually, and to be appropriated annually under the superintendence and direction of Dr. Buttolph, the superintendent of said institution, and his successors in office forever, for the purchase of books and papers for the benefit of the unfortunate inmates of said institution."

The question submitted on the eighth item of the will is, whether the moneys mentioned therein shall be paid, and if so, to whom? The bequests are to the Sunday schools of three churches. They are charities for the benefit of the children taught in those schools. The schools are not incorporated bodies. They are organized adjuncts of the churches, and are part of the means of religious instruction therein. The churches to which they are attached are corporations. The objects and purposes which the testator intended to accomplish by the bequests are within the general scope of the purposes of the institution of those corporations, and the trusts relate to matters which will promote and aid their general purposes. Each church corporation will, therefore, (there being no trustee appointed by the will,) be appointed trustee to receive the money bequeathed to its Sunday school on the trust declared in the bequest, and will be required to administer the trust accordingly. *Perry on Trusts,* § 43.

The bequest of $800, made in the tenth item, to the children of the testator's deceased sister, Mary Ann Cook, and their heirs, naming as such children, William Montgomery, Sarah Hyflinger and Mary Ann Wright, with direction that

the money be invested on bond and mortgage of real estate, and that the interest thereon "be divided equally between them forever," is a gift to the persons therein named as tenants in common, and there is, therefore, no survivorship. *Hawkins on Wills* 111, 112; *Jarman on Wills* 293, *n.*, 295, *n.*; 2 *Redfield on Wills* 586; *Bagwell* v. *Dry*, 1 *P. W.* 700; *Page* v. *Page*, 2 *P. W.* 489; *Owen* v. *Owen*, 1 *Atk.* 494; *Peat* v. *Chapman*, 1 *Ves.*, *Sr.*, 542; *Ackerman* v. *Burrows*, 3 *V. & B.* 54; *Downing* v. *Marshall*, 23 *N. Y.* 366. The fact that the gift is to them and their heirs, would not limit their interest in the fund to a life estate, unless there were a clear expression of intention that the gift to them should be only a life estate. 2 *Redfield on Wills* 385. There is no such expression. And under the bequest the legatees named are entitled to the fund itself. The gift of the $800 is absolute. The produce of the fund is given to them without limit as to time. There is no limitation over, or further disposition of the fund or interest. *Gulick's Ex'rs* v. *Gulick*, 10 *C. E. Green* 324, and cases there cited. *S. C., on appeal, post.*

That bequest, so far as William Montgomery is concerned, was revoked by the first codicil, the first clause of which gives to him the testator's wearing apparel and $150 in cash, "in full of all bequests to him." This bequest in the codicil is not a cumulative legacy, but is substitutional. The testator had, by the will, given to William Montgomery, in addition to a share of the $800, his wearing apparel; and he had also given the residue of his estate, if any, to the children of his sister, Sarah Whitaker, and the children of his deceased sister, Mary Ann Cook, among whom he reckoned William Montgomery, as will have been seen by the $800 bequest. Montgomery, in fact, was not the child, but the grandchild of Mary Ann Cook. He was the son of her deceased daughter. That the testator intended the bequest in the codicil as a substitute for the bequest in Montgomery's favor in the will, is evidenced by the fact that he had, in the will, as before stated, given his wearing apparel to Montgomery, and by the words used in the bequest, in the codicil, "in full of all bequests to

him." By the words "in full," the testator meant "in lieu." Where he intended to give a cumulative legacy, he used appropriate and unequivocal language for the purpose, as appears by the fourth item of the second codicil, in which he gives and bequeaths to his sister, Sarah Whitaker, "the additional sum of $300, in addition" to what he had already bequeathed to her.

The fact that the bequest to William Montgomery of a share of the $800 was revoked, and that that share is not otherwise disposed of, will not give to Sarah Hyflinger and Mary Ann Wright the entire fund. *Cresswell* v. *Cheslyn,* 2 *Eden* 123 ; *S. C.,* 6 *Bro. P. C.* 1. They are each entitled to one-third of the $800. They have applied for payment of the fund to them. Their shares will, notwithstanding the direction for investment, be paid over to them.

By the eleventh item of the will, the testator gives to his sister, Sarah Whitaker, and her children, "$1000, to be invested on bond and mortgage of real estate, and the interest to be collected and paid over to them annually, and equally divided between them." This is a gift of the principal sum, absolutely, and the legatees are entitled to it accordingly. The gift is to them as tenants in common, and the context shows that the mother and children are all to take at once. The gift is immediate and absolute, and Mrs. Whitaker and her children, who were living at the death of the testator, take, as tenants in common, in equal shares; her children each taking an equal share with her. *De Witte* v. *De Witte,* 11 *Sim.* 41 ; *Mason* v. *Clarke.* 17 *Beav.* 130 ; *Gordon* v. *Whieldon,* 11 *Beav.* 170 ; *Cunningham* v. *Murray,* 1 *De G. & S.* 366. They are entitled to the fund, and having applied for it, and the children being all adults, it will, notwithstanding the direction to invest, be paid over to them.

The fourth item of the second codicil, the additional bequest to Mrs. Whitaker, is an absolute gift.

The gift to the townships of Little Egg Harbor and Bass River, of the sum of $500, to be invested on bond and

mortgage of real estate, for the use and benefit of the inhabit-
ants of those townships; the interest to be collected annually,
and divided between those townships in proportion to the
number of inhabitants in each, for the purpose of educating
their poor orphan children ; and in case the interest should not
all be " consumed," or used for this purpose, the balance to be
appropriated, annually, to the poor widows of the townships
—is a charity such as this court will sustain and effectuate.
The testator constitutes the townships trustees of the fund as
an entirety. He evidently contemplated committing it to the
administration of the townships, jointly. This part of the
testator's plan, so far as respects the persons (the township
corporations) by whom the trust is to be administered, cannot
be carried out. They are not proper trustees of the fund.
The court will appoint a trustee to administer the trust
according to the intentions of the testator, as expressed in the
will.

The thirteenth item of the will gives to the New Jersey
State Lunatic Asylum, $500, to be invested on bond and
mortgage of real estate, and the interest to be collected annu-
ally, and to be appropriated annually, under the superintend-
ence and direction of Dr. Buttolph, the superintendent of the
institution, and his successors in office, forever, for the pur-
chase of books and papers for the benefit of the unfortunate
inmates of the institution.

The managers of the State Lunatic Asylum are authorized,
by law, to receive this bequest, and will be required to admin-
ister the trust according to the directions of the will. By the
fifth section of the act " to provide for the organization of
the State Lunatic Asylum, and for the care and maintenance
of the insane," (*Nix. Dig.* 523), it is enacted that the managers
of that institution may take and hold, in trust for the state,
any grant or devise of land, or any donation or bequest of
money or personal property, to be applied to the maintenance
of insane persons, or the general use of the asylum. The
legacy will, therefore, be ordered to be paid to the treasurer of

the institution, to be held and administered by the managers, on the trust declared in the will.

The question (raised on the argument, but not by the pleadings,) under the third item of the second codicil, by which $500 are given to the Methodist Episcopal Church at Tuckerton, in addition to a bequest in the will to that corporation of $300, to be invested, and the interest applied to maintaining a fence around a cemetery, is whether the money given in the codicil is to be invested, and the interest only applied to the debt, or whether the legacy is to be paid over, to be applied at once to the debt? The $500 are given towards paying off the debt of the church, and the testator adds an expression of his earnest desire that the money shall never be used for any other than strictly religious purposes and the worship of Almighty God. He distinctly expresses the purpose to which he intended that the money should go—the payment of the church debt. This money is to be paid to the treasurer of the corporation, and the corporation will hold it in trust, to apply it to that purpose.