JOHN E. MURPHY et al.

*v.*

MARGARET A. McKEON et al.

A testator devised lands to a brother who died before the enactment of the amendment to the act concerning wills, which was approved March 29th, 1887 (*P. L. of 1887 p. 63*), but during the life of the testator, leaving children who survived the testator.—*Held,* that the statute referred to does not apply to the case so as to give the brother's children the lands intended for their father.

On motion to open and amend decree of distribution in partition.

The partition is of lands which were the property of John Murphy, deceased, who died on the 29th day of March, 1892, leaving a will dated on the 5th of September, 1873, with a codicil thereto dated on the 28th of March, 1892.

By the will, among other provisions, he made this:

"*Second.* I do give and bequeath unto my beloved wife, Bridget, all my real and personal property, wheresoever situate, during her natural life, and, in the event of her death or marrying again, then it is my will that all my real and personal property shall go to my brother Hugh, absolutely."

By the codicil to the will he gave two nieces, Mary and Margaret McKeon, a parcel of his real estate, appointed an executor of his will, and concluded with this clause:

"*In all other respects I confirm my will heretofore made.*"

He died without issue. His wife survived him until December 29th, 1893. His heirs-at-law were the children of two sisters and of his brother Hugh, his sisters and brother having predeceased him. The date of Hugh's death was September 11th, 1884.

All the heirs-at-law are parties to the partition suit. The master has reported that they are each entitled to a share in the proceeds of the partition sale, and the decree for distribution has ordered accordingly. Now the children of Hugh Murphy move to open and amend the decree, claiming that, in virtue of the will and the statute to amend the act concerning wills of March 29th, 1887 (*P. L. of 1887 p. 63*), they alone are entitled to the proceeds of sale.

*Mr. Charles D. Thompson*, for John E. Murphy et al., children of Hugh Murphy, deceased.

*Mr. Gilbert Collins*, for Ellen McKeon et al.

*Mr. Joseph M. Noonan*, for Margaret A. McKeon.

*Mr. James A. Gordon*, for Thomas C. McKeon.

Murphy *v.* McKeon.

THE CHANCELLOR.

The question is whether the devise to Hugh Murphy is within the direction of the amendment to the act concerning wills, approved March 29th, 1887 (*P. L. of 1887 p. 63*), so that the proceeds of the sale of the lands shall be distributed among his children to the exclusion of the children of the testator's sisters.

The section of the act concerning wills which the statute of 1887 amends, was first enacted in 1824. *Elm. Dig. 601.* It is now found in *Rev. p. 1246 § 22*, as follows:

"That whensoever any estate of any kind shall or may be devised or bequeathed by the testament and last will of any testator or testatrix, to any person being a child or other descendant of such testator or testatrix, and such devisee or legatee shall, during the life of such testator or testatrix, die testate or intestate, leaving a child or children, or one or more descendants of a child or children who shall survive such testator or testatrix, in that case, such devise or legacy to such person so situated as above mentioned, and dying in the lifetime of the testator or testatrix shall not lapse, but the estate so devised or bequeathed shall vest in such child or children, descendant or descendants of such legatee or devisee, in the same manner as if such legatee or devisee had survived the testator or testatrix and had died intestate; but this provision shall not apply where the testator or testatrix shall, by said will and codicil thereto, or other instrument, have otherwise directed in regard to the children or descendants of the said devisee or legatee dying as aforesaid."

The amendment of 1887 extends the benefit of the original statute to brothers and sisters of the testator and their descendants, as follows:

"That whenever any estate of any kind shall or may be devised or bequeathed by the testament and last will of any testator or testatrix, to any person, being a child or other descendant of such testator or testatrix, or being a brother or sister or any descendant of a brother or sister of such testator or testatrix, and such devisee or legatee shall" &c.,

following, to the end, the language of the section amended.

The rule is that a devise or legacy will lapse by the death of the devisee or legatee before the testator, unless provision shall be made, by will or by statute, against a lapse. *4 Kent Com. 541; Theob. Wills 601; Maybank v. Brooks, 1 B. C. C. 84; Dildine v. Dildine, 5 Stew. Eq. 78, 80.*

Murphy v. McKeon.

There is a distinction, also, between a lapsed and a void devise. In the former case the devisee dies in the intermediate time between the making of the will and the death of the testator, but in the latter case the devise is void from the beginning, as if the devisee be dead when the will was made. *4 Kent Com. 541.*

Eliminating from the statute language superfluous to this case, it reads in this way: "Whenever estate shall or may be devised to a brother who '*shall die*' during the life of the testator, leaving children surviving the testator, the devise shall not 'lapse,' but vest in the children of the brother as if he had survived the testator and died intestate."

It is observed that by strict grammatical construction the event provided against is a lapse of the devise. This language has led to the objection that the statute is not applicable to the case of a void devise, as where the devisee dies before the making of the will.

Such interpretation of similar statutes has been adopted. In *Billingsley* v. *Tongue, 9 Md. 575,* the testator made his will on the 20th of September, 1853, by which he devised property to a sister who had died the day previous. The children of the sister invoked the authority of the statute. The court held that, as the statute provided that no devise should "lapse or fail of taking effect," the latter expression being a mere amplification of the word "lapse," that the language imported the happening of a future contingency to defeat the devise, providing against that, and did not give effect to the mere expression of a devise in a will which was void and without effect at the time the will was made.

Upon the same reasoning, also, was decided the case of *Almy* v. *Jones, 17 R. I. 265.*

But I think that the better opinion gives a broader meaning to the word "lapse," upon a construction of similar statutes which regards rather their beneficial policy and ends than the strict meaning of their language.

In *Nutter* v. *Vickery, 64 Me. 490,* a testator gave real and personal estate to a sister, who was dead when the will was made, leaving descendants. In his opinion in that case, Mr. Justice Barrows said:

"We are satisfied, upon reason, principle and authority, that the lineal descendants of a relative of the testator having a bequest in the will are entitled to the legacy given to their ancestor by virtue of *Rev. Stat. ch. LXXIV. § 10,* though the original legatee was, in fact, dead at the date of the will. The statute is in furtherance of what may fairly be presumed to have been the intention of the testator, and, in order to effect its object, it should be construed liberally, as remarked by Mr. Justice Hubbard, in *Paine* v. *Prentiss, 5 Metc. 399.* Any other interpretation of the statute which has been the law of this state for nearly a century, we think, would be liable to operate harshly and adversely to the intent of the testator almost universally.

"The adverse argument is based upon the distinction between lapsed and void devises, and the assumption that the statute takes effect only in cases of lapse. But no such limitation of its effect is found in the statute, the intent of which obviously is to save the lineal descendants of the person named as devisee in the will, the benefit of a devise which would at the common law fail of effect by reason of the death of the original devisee before the testator. The statute has regard rather to the class of individuals for whose relief it is interposed, than to any technical distinction in the manner of the failure against which it proposes to guard them. As to them the result at the common law would be the same whether their ancestor died before or after the date of the will, if he died before the testator. Against this result, in either case, the statute places a barrier."

In *Minter's Appeal, 40 Pa. St. 111,* a bequest by a testator to his sister was declared to be valid, though she was dead when the will was written, having left children that survived the testator. In that case Chief-Justice Lowrie said :

"This interpretation of the law is so just and presents itself so naturally that we need waste no words about it."

Another case of this class is *Winter* v. *Winter, 5 Hare 306,* which construes the thirty-third section of *1 Vict. c. 26,* that was passed in July, 1837, and went into operation on the 1st of January, 1838, and is in this language :

Murphy v. McKeon.

" Where any person, being a child or other issue of the testator, to whom any real or personal estate shall be devised or bequeathed for any estate or interest not determinable at or before the death of such person, shall die in the lifetime of the testator, leaving issue, and any such issue of such person shall be living at the time of the death of the testator, such devise or bequest shall not lapse, but shall take effect as if the death of such person had happened immediately after the death of the testator, unless a contrary intention shall appear by the will."

The facts of that case were that John Winter, by his will, dated November 13th, 1833, gave a share of his residuary estate to his eldest son, John Palmer Winter, and that during the year 1838 the son died, leaving issue which survived John Winter. The will was confirmed and ratified by a codicil made in 1839.

It was held that, under the thirty-fourth section of the same statute, the effect of the republication of the will by the codicil was to remake the will as of the date of the codicil, the result being that a share of the residuary estate was given to John Palmer Winter, who was then dead. The court then, with a view to decide whether the act would apply where the devise was to one who was dead when the will was made, proceeded to consider the force of the words " shall die," referring to the devisee dying in the lifetime of the testator, upon the suggested question whether those words, which, without question, were assumed to import that the event death considered was in the future, referred to death after the making of the will or to death after the statute should go into operation.

The vice-chancellor (Wigram) said :

" Now, the policy of the act and the objects it was intended to accomplish are, for the present purpose, sufficiently manifest. It was intended to prevent a portion given by a testator to a child, going from the estate of such child, and his family being left portionless by reason only of the death of the child under circumstances—a consequence of law which the common feelings of mankind declared to be a disappointment of the intention of the father.

" The cases in which this event most commonly happened and against which the act was intended to provide, were cases in which the child died in the testator's lifetime after the bequest

was made, and cases in which the testator, in providing for an absent child, was ignorant of the fact that such absent child was dead. In both cases the family of the child dying after or dead at the time of the bequest, was left unprovided for; and it was to remedy this evil, amongst others, that the thirty-third section of the Wills act was passed.

"The construction of the act, which alone will include all the cases which the act must presumably have been intended to include, is that which makes the time of the legatee's death unimportant, provided he died after the act came into operation and the bequest to him is by will made after that date, and, as far as I can see, that construction cannot possibly include any case not obviously within the purposes of the act."

This decision was reaffirmed by the same vice-chancellor, in *Mower* v. *Orr*, *7 Hare 473*, where the devise was to a son, by a will made after the statute of Victoria had gone into operation and after the death of the son, which was subsequent to the acts taking effect. In the argument of the latter case, attention was called to the decision in *Wild* v. *Reynolds, 5 Notes of Cas. Ecc. & Mar. Cts. 1*, where a testatrix, by will made in 1825, bequeathed property in trust for three children who died in her lifetime, prior to 1838, one of them leaving a child, and thereafter, in 1840, by codicil, republished her will, and it was held that the legacies had lapsed, and were not revived under the thirty-third section of the statute of Victoria, by the codicil.

It is observed that the construction of the act of *1 Vict.*, in *Winter* v. *Winter* and *Mower* v. *Orr*, brings within the act the case of a devisee who dies before the will is made, and that thus far it serves the case in hand. But this case and *Wild* v. *Reynolds* differ from those cases in the particular that in those cases the devisee was alive while the statute was in effect, while in this case and in *Wild* v. *Reynolds* the devisee was dead before the enactment. In *Winter* v. *Winter* the vice-chancellor most plainly says that in such an event the statute will not save the lapse.

Following *Winter* v. *Winter*, I think that the true interpretation of the words "shall die," as used in our statute with reference to the devisee, is that they speak of his death after the

statute shall have taken effect. It is impossible to give those words retrospective operation. Their meaning clearly has reference to the future, and, as determined in *Winter* v. *Winter*, that future is not after the making of the devise, but after the taking effect of the statute.

My conclusion is that the statute of 1887 is not applicable to the case in hand, because Hugh Murphy did not die after that act had taken effect, and I will, therefore, deny the motion.