Lyon v. Clawson.

---

---

SAMUEL H. LYON and JAMES M. LYON

*v.*

WILLIAM S. CLAWSON, trustee, &c., et al.

[Filed April 6th, 1898.]

There was a bequest to executors of $20,000 to pay the interest thereof to A during life, and the principal sum to A's children after her death. There was a codicil, reciting the former gift as one to the executors to pay interest to A during her life, and revoking this bequest and directing the executors to invest $12,000 instead of $20,000, and pay the interest thereof to A during her life.—*Held,* that the clause in the will directing the executors to pay the sum invested to A's children after her death was not revoked by the codicil.

---

*Mr. William T. Hilliard,* for the complainants.

*Mr. Samuel H. Grey,* for the defendants.

Lyon v. Clawson.

REED, V. C.

This bill is filed to obtain a construction of the will of Isiah D. Clawson, deceased, and also to compel William S. Clawson, trustee under the said will, to pay to the complainants the shares of a legacy bequeathed to Israel Hires and Harry S. Hires, and by them assigned to the complainants.

The deceased, by his will, dated December 13th, 1871, made the following bequest:

"*Item.* I give, devise and bequeath to my executors the sum of twenty thousand dollars, which I direct them to keep at interest on good mortgage security, and to pay to my sister Elizabeth, wife of Rev. Allen J. Hires, during her natural life, annually, the interest thereof; the first payment to be made to her in one year after my decease. And I do order my executors, within one year after the decease of my said sister Elizabeth, to pay over the principal sum of twenty thousand dollars, and the interest which may have accrued thereon, to the children of my said sister Elizabeth in equal portions, share and share alike; and should any child or children of my said sister Elizabeth die before my said sister Elizabeth, leaving a child or children surviving, then such child or children to take the share of such deceased parent. But should any child or children of my said sister Elizabeth, or any child or children of a deceased child, not having attained the age of twenty-one years at the decease of my said sister Elizabeth, then I order the share of such minor child or children to be paid to them respectively when they arrive at the age of twenty-one years."

The testator afterwards, under date of December 11th, 1876, executed a codicil to this will, in the terms following:

" Whereas, I, Isiah D. Clawson, of Woodstown, Salem county, New Jersey, have made my last will and testament, bearing date the first day of December, A. D. eighteen hundred and seventy-one, and, in my said last will, I give and bequeath unto my executors the sum of twenty thousand dollars, which I direct them to keep at interest on good security, and to pay the interest annually to my sister Elizabeth, wife of the Rev. A. J. Hires, during her natural life; now, I do take from my said executors the said sum of twenty thousand dollars and revoke and annul the said bequest, and direct them to keep and put at interest the sum of twelve thousand dollars instead of the twenty thousand dollars, for my said sister Elizabeth to have the interest of annually during her natural life, which sum of twelve thousand dollars I give my executors for the purposes aforesaid."

All the rest of the estate was given to the executors to hold in trust for certain purposes. All these executors had died or re-

signed, and the defendant William S. Clawson is now trustee and entitled to said residue.

Elizabeth, the wife of the Rev. Allen J. Hires, died July 29th, 1896. She left surviving her three children, Israel C. Hires, Harry S. Hires and Elizabeth E. Clawson. On April 9th, 1886, while their mother was still living, the two sons assigned their shares in said legacy to the complainants for a valuable consideration, and directed the executors of said will to pay the same to the complainants. This assignment seems to have been made to secure the payment by the two Hires to the complainants of the sum of $4,500, with interest thereon from April 9th, 1886, and also to secure the repayment of premiums paid by the complainants upon an insurance policy issued upon the life of Harry S. Hires, and also to secure the repayment of premiums paid by the complainants for fire insurance upon a steamboat. The complainants seem to have paid these premiums, and there is a debt due to them from the two heirs in excess of the sum of $8,000.

William S. Clawson and Martha Clawson, two of the defendants, filed an answer denying that any legacy belonged to the children of Elizabeth, and that therefore no interest passed from them to the complainants by the assignment. They also challenge the right of the complainants to file this bill, even if the legacy belonged to the children of Elizabeth.

The first question in order is whether, assuming that Israel C. and Harry S. Hires were each entitled to one-third of the principal sum of $12,000 upon the death of their mother, and assuming that such right passed to the complainants by assignment, the complainants are rightly in this court in this suit.

I can perceive no substantial reason for a doubt.

Upon the death of Elizabeth there was imposed upon William S. Clawson, as trustee, the duty of paying over the money to the legatees. The right of the legatees to compel the executor to execute this trust in this court is entirely clear. The right of the *cestuis que trust* passed to the complainants by the assignment, and whether the assignment was absolute or in pledge to secure the personal indebtedness of the legatees, in either case the com-

Lyon *v.* Clawson.

plainants were invested with the right to recover the full amount of the gifts assigned to them. Their right to compel the execution of the trust, therefore, seems entirely clear.

The second is the important question. Had the children of Elizabeth E. Clawson any interest in the $12,000 after the death of their mother? The insistence of the trustee is that the codicil to the will revoked the provisions in the will by which the children of Elizabeth were to receive the principal sum of $20,000 or any other sum.

The gift contained in the codicil is clearly substitutional. The language is that $12,000 shall be kept out at interest, instead of $20,000 as is provided for by the will. The complainants rely upon the rule that the substituted legacy is subject to the same incidents and conditions as the original legacy. *Hawk. Wills 306 ; Jarm. Wills (R. & T. ed.) 354.*

Mr. Theobald states the rule to be drawn from the cases cited by him in this way :

"A gift in addition to or in lieu of a previous gift to the same legatee, is subject to the same conditions as the previous gift, with respect to vesting, separate estate, the fund out of which it is payable, freedom from legacy duty and provisions against lapsing." *Theob. Wills (4th ed.) 125.*

In respect to the question whether a substitutional gift is subject to a gift over attached to the original gift, the same author remarks :

"It is not quite clear whether an additional or substitutional gift will be subject to the same executory gift over as the original gift. It seems, however, that it will not."

Sir W. Paige Wood, master of the rolls, in *Mann* v. *Fuller, Kay 624,* said : "If the former gift was absolute and free of legacy duty, the additional gift has been held to have all the same incidents ; so, if the former is to be lost on a certain event, the additional gift is to be defeated on the same conditions. In no case has it been held that the latter gift is to go to the parties entitled under the subsequent limitations of the former gift."

In that case a legacy was given to A for life, with an execu-

tory gift over, and then there was an additional gift simply to A, and it was held that A took the latter gift absolutely.

And in *Sandford* v. *Sandford, 1 De G. & S. 67,* the same was held in respect to a substitutionary gift. I have found no case, however, which seems to me to be similar to the one in hand. It is insisted by the counsel for the trustee that the case of *Sandford* v. *Sandford* is directly in point. In that case the testatrix bequeathed £3,000 to a person for life, and after her death to her children, and, in case there should be no children, to P. By a codicil, which stated that the legatee for life had been largely provided for from other sources, the testatrix deducted £2,900 from the legacy of £3,000, and revoked so much of the legacy accordingly, leaving the legatee £100 only as a remembrancer, it was held that the legatee took the £100 absolutely. If the gift of the $12,000 in the codicil of the present will had been given to Elizabeth absolutely, these two cases would bear an appearance of similarity, but this codicil gives her only a life interest in the $12,000—the same interest that she had in the $20,000 mentioned in the will. Unless the children take after her death, this sum in this case falls into the residuum.

Apart from this difference between the two cases there were indications in the will, in the former case, of a testamentary intent (always the ultimate object to be ascertained) that the legatee should take the substituted gift absolutely. The substituted gift was an insignificant fraction of the original gift, and it was expressly given to the legatee as a souvenir. It was not intended as a substitutional legacy for the purpose of providing for the family of the legatee, as was the obvious object of the original gift. On the other hand, in *Condict* v. *King, 2 Beas. 381,* there was a devise of land to testator's grandson for life, with a remainder to testator's daughter, and after the execution of the will the testator sold the land and put the proceeds into a mortgage, and then made a codicil giving the mortgage to the grandson, instead of the land, but making no limitation over. Chancellor Green held that the grandson took the life estate only in the mortgage, and at his death it became the property of the daughters. The circumstances in that case, particularly the fact

that the mortgage represented the land, showed a testamentary intent that the incidents attached to the gift of the former were, although unmentioned in the codicil, inherent in the gift of the latter.

But, as already remarked, there is no question in this case whether Elizabeth took the substitutional gift upon the same terms as she took the original. The language of the codicil gives her a life interest, just as did the will. The query is whether the silence of the codicil relative to the disposition of the principal after the death of Elizabeth revokes that part of the will that gave it to her children. It is urged that the gift in the will was to the executors and not to the children; that this gift was annulled and revoked in the codicil, and that, therefore, unless the substituted gift to the executors was coupled with a new direction to them to pay the principal, after the death of Elizabeth, to her children, the principal belongs to the trustee. But the same argument would apply to any substitutional gift whenever the codicil revokes and annuls the provision in the will bequeathing the original gift. The use of the words "revoke" or "annul" has no special force whenever the object of the revocation is to make a substitutionary gift. The use of these words does not prevent the substituted legacy from having the incidents of the original one. *Cooper* v. *Day, 3 Mer. 154; Fisher* v. *Brierley, 30 Beav. 267.* Besides, it is to be observed that the testator only revoked the bequest recited, and the bequest as recited was that for the use of Elizabeth during her life.

It seems obvious that the mind of the draftsman of the codicil was intent only upon a change in the amount of the gift. In making the change he wished to identify the particular gift in the will referred to. The feature of that gift which occurred to him as the most useful for that purpose was the fact that it was given to the executors to invest for the benefit of Elizabeth during her life; that it was a gift made for that purpose—was entirely sufficient to identify the particular gift to be changed by the codicil. The draftsman did not go on to set out that it was the gift which the executor was to pay after the death of Elizabeth to her children, and also the provisions concerning the

effect upon its course arising from the death of such children. The incorporation of all that in the description was unnecessary for the purpose then in mind, namely, to identify the original gift meant.

After describing the gift meant to be changed, the codicil proceeds:

"I do take from the said executors the said sum of $20,000, and revoke and annul the said bequest and direct them to keep and put out at interest $12,000, instead of $20,000, for my said sister Elizabeth to have the interest during her natural life."

His meaning was this: Instead of giving my executors the $20,000, which I directed them to invest and pay to my sister the interest thereof during her life, I give them $12,000 to invest and pay the interest to her during her life. The concluding words, "which sum I give for the purpose aforesaid," are merely redundant, and do not mean that it was given for that purpose solely and only. A change in the gift over to the children, apart from the amount given, was not in the mind of the draftsman of the codicil at all. If it had been his intention to annul the gift to the children, it is inexplicable why he did not do so in express words. It seems to me he would have limited the gift in the codicil solely to the payment of the interest to Elizabeth, or would have provided that, after the death of Elizabeth, the $12,000 should fall into the residue. The revocation of the gift over must be clear. It is not clear. I am of the opinion that there was no intention to revoke the gift over of the principal sum. The amount was reduced by the fact that the sum of $12,000 was substituted for the $20,000 as the amount to be invested by the executors; and as it was the sum directed to be invested for the life use of Elizabeth, which the executors were directed to pay over to her children after her death, the change in that sum to be invested from $20,000 to $12,000 reduced the amount of the principal sum upon which the executory gift over was to operate.

Decree advised for complainants.