The executors of the last will of Elizabeth A. Bateman, deceased, seek the direction of the court in the distribution of her estate. The principal question presented relates to a share of the estate given to Mrs. Helen Hoff, who predeceased testatrix. The seventh paragraph of the will reads:
"All the rest, residue and remainder of my Estate of every kind and nature and wheresoever situate I give, devise and bequeath to the above named Mrs. Harriet King, Mrs. Helen Hoff, Mrs. Ellen Vreeland, Job Haines Home for Aged People, Home for Crippled Children, Home for Incurables and Hospital, Young Women's Christian Association, Young Men's Christian Association, Society for the Relief of Respectable Aged Women, Babies Hospital and the Hospital of St. Barnabas to be equally divided between them, the shares or portions of the various corporations and institutions above named to be added to the endowment funds of said institutions the income only to be applied to the uses and purposes of said institutions."
The adjective "above named" refers to the fact that all the residuary legatees are mentioned earlier in the will. The three individuals are among fourteen legatees under the fourth paragraph, and the eight institutions are, together with the Clinton Avenue Reformed Church, legatees named in the fifth paragraph. Mrs. King and Mrs. Vreeland were cousins of Mrs. Bateman. Mrs. Hoff was not related to testatrix at all. The only heir and next-of-kin of testatrix was her brother, Cornelius M. Post. By the fourth paragraph of the will, $3,000 was given him and $2,000 to his daughter, Mrs. Bertha Smith. The will contains no other provision for their benefit.
Mrs. Hoff died February 21st, 1927, survived by testatrix who died September 3d 1930. *Page 299 
If there were no other circumstances to be taken under consideration, the disposition of the share of the residue given Mrs. Hoff would be too clear for serious argument. A gift or devise to two or more named persons, in the absence of some indication to the contrary, is a gift to them severally as tenants in common, and upon the death of one of them in the lifetime of testator, the gift to him lapses. So with the gift to Mrs. Hoff. Though the rule is that lapsed legacies fall into the residue of the estate and pass pursuant to a general residuary bequest, a legacy of a share of the residue itself, upon lapsing — such as Mrs. Hoff's share — is not included in the balance of the residue. The testator dies intestate as to that share and it goes to his next of kin. Garthwaite's Executor v. Lewis,25 N.J. Eq. 351; Hand v. Marcy, 28 N.J. Eq. 59; Collins v.Bergen, 42 N.J. Eq. 57; Damron v. Mast, 121 N.J. Eq. 489.
When there is a gift to a "class" while the beneficiaries may take as tenants in common, the members of the class are determined at the time of the testator's death, or whenever the gift vests; and so if there is a class gift to children, for instance, and one of them dies before testator, no lapse or intestacy occurs, for the members of the class are not determined until testator's death. Gordon v. Jackson, 58 N.J. Eq. 166;Trenton Trust and Safe Deposit Co. v. Sibbits, 62 N.J. Eq. 131;Rowley v. Currie, 94 N.J. Eq. 606; Forshee v. Dowdney,101 N.J. Eq. 446; 103 N.J. Eq. 374. A gift to a class is commonly defined as a gift of an aggregate sum to a body of persons, uncertain in number at the time of the gift, to be ascertained at a future time who are all to take in equal or some other definite proportions, the share of each being dependent for its amount upon the actual number. Clark v. Morehous, 74 N.J. Eq. 658.
It is entirely clear that the residuary bequest in Mrs. Bateman's will is not a gift to a class for the legatees were not uncertain in number at the time of making the will. Even if the donees had in fact constituted a "class," yet the gift was to them by their respective names and was therefore a gift to them individually, in severally and not a gift to a class. Dildine
v. Dildine, 32 N.J. Eq. 78; Pennsylvania Company *Page 300 for Insurance of Lives, c., v. Riley, 89 N.J. Eq. 253;Stetson v. Kinch, 92 N.J. Eq. 362; Redmond v. Gummere,94 N.J. Eq. 216; Traverso v. Traverso, 99 N.J. Eq. 514; 101 N.J. Eq. 308.
But as pointed out in Dildine v. Dildine, where the gift is to named persons who do make up a class if other parts of the will disclose that it was testator's intention that they take as a class and not individually, the will will be construed accordingly. When we say that named persons constitute a class we mean that they have some common characteristic by which they may be designated without resort to their individual names, as for instance, the children of X. Now it is obvious that the eleven persons and corporations named in Mrs. Bateman's residuary clause possess no common feature; they do not constitute a class. Of course, a testator by the use of apt language may make a gift to a heteregeneous group of persons in such manner that those who survive him will take the whole fund. But the will under scrutiny contains nothing to accomplish such an effect.
I have considered class gifts at some length principally to demonstrate that the rules governing such gifts do not apply to Mrs. Bateman's will. If there were nothing else in the case, it would be plain that testatrix gave an undivided eleventh part of her residuary estate to Mrs. Hoff; that the gift lapsed on Mrs. Hoff's death in the lifetime of testatrix, and that Mrs. Bateman died intestate as to this share so that it passed to her heir and next of kin, Mr. Post. The additional factor of which I have hinted, I will now state. Four days after Mrs. Hoff passed away, Mrs. Bateman made the following codicil to her will:
"First. I cancel and revoke the legacy of Fifteen Thousand Dollars given to Mrs. Helen Hoff in the fourth paragraph of my said Will, and I give and bequeath the sum of Fifteen Thousand Dollars to Miss Annie M. Gwinnell of the City of Newark, Essex County, New Jersey; and I cancel and revoke the legacy of `all the balance of my clothing, jewelry, household goods, linens, furniture, rugs, silver and glass ware and purely personal belongs' to Mrs. Helen Hoff in said fourth paragraph, and I give and bequeath said balance of my clothing, jewelry, household goods, linens, furniture, rugs, silver and glass ware and purely personal belongings to said Miss Annie M. Gwinnell.
"Second. In all other respects I do ratify and confirm my aforesaid will, and the codicil thereto dated April 28, 1925." *Page 301 
When Mrs. Bateman made the codicil, she was aware of Mrs. Hoff's death. The legacy of $15,000 and of clothing and other personal belongings, were the only provisions in the will for the benefit of Mrs. Hoff, save the residuary bequest. The striking feature of the codicil is the absence of any mention of the residuary bequest to Mrs. Hoff. The question is what Mrs. Bateman had in mind respecting that gift.
Perhaps Mrs. Bateman had intended to make some express disposition of it in her codicil, for instance, to give it to Miss Gwinnell, but through an oversight failed to do so. Perhaps she thought that by operation of law Mrs. Hoff's family would take in the place of Mrs. Hoff. Or perhaps she supposed the law to be that the two surviving persons and the eight charities named in the seventh paragraph of the will would take the whole residue just as if there were a gift to a class. Or perhaps she correctly understood the law that the legacy to Mrs. Hoff lapsed and would pass to the brother of testatrix.
A testamentary intention that the heirs or next of kin of a devisee or legatee shall take in his stead in the event he dies before title vests in him, is very common. This is evidenced by innumerable cases in our reports dealing with wills which contain provisions contrived to that end. I surmise that a good many laymen think that even if the will is silent on the subject, the substitution will occur. Indeed, such a belief is justified by statute in certain instances. R.S. 3:2-18. An odd case which is illustrative of the point is Dildine v. Dildine, supra.
Testator gave part of his estate to two sisters who he knew were dead when he made his will. Chancellor Runyon said, "He might have intended (and I think he probably did so intend) by the gift to bestow one-quarter of the property on the children of his sisters, the scrivener using the names of the sisters with a view thus to express the testator's intention that their children should take per stirpes. But if such was the testator's intention, he has not so declared it as to effectuate it. The rules of construction forbid the substitution of the children for the parent under such a bequest. * * * The fact that the testator intended to dispose of all of his property by the will, will no more lead to the conclusion that he intended a survivorship than it will *Page 302 
to the conclusion that he intended a substitution." Murphy v.McKeon, 53 N.J. Eq. 406, and Zabriskie v. Huyler, 82 N.J. Eq. 697,
are probable instances of a testator's understanding that the law substituted the heirs of a deceased devisee in his stead. And in Damron v. Mast, supra, where the will threw no light on testator's wish in the event a beneficiary should be prevented by death from taking the gift, Vice-Chancellor Buchanan wrote, "It is quite possible either that the contingency may not have occurred to him, or that he had the erroneous belief that in all cases if a beneficiary predeceased him, the representatives of such beneficiary would take the gift. This latter is perhaps the more likely supposition, since he has made no provision whatever, either by special substitutionary gift or by a secondary residuary clause, for the disposition of the respective gifts made separately to Steven Hanusecky and to Mrs. Brandenberg."
None of the parties to the present suit argue that Mrs. Bateman intended Mrs. Hoff's kindred to take her share of the residue — and even if that were her intention, it would be ineffective because it is not expressed. The remaining residuary legatees contend that testatrix intended that they should take the whole residue and they cite in support of their position several cases in which codicils played a part. In Security Trust Co. v.Lovett, 78 N.J. Eq. 445, Vice-Chancellor Leaming dealt with a will leaving testator's estate to his wife for life and after her death "one-twelfth part or share to be divided between" named "children of my deceased daughter, Sarah Eisley, to which she would be entitled to if living." One of Mrs. Eisley's children predeceased testator. The vice-chancellor said, "I think it apparent that it was the intention of testator to give one-twelfth of his estate to the children of his daughter Elizabeth as a class. By the will he divided his entire estate into twelve equal shares and gave one share to each of his eleven living children and the other share to the `children of my deceased daughter, Sarah Eisley, to which she would be entitled to if living.' * * * This general plan discloses a purpose on the part of testator to dispose of his entire estate and to dispose of it in equal shares in such manner *Page 303 
that the children of his deceased daughter should represent their mother and take their mother's share. The mere fact that the children of his deceased daughter were mentioned by name should not, I am convinced, be considered sufficient to overcome the intent which seems otherwise apparent. * * * But another circumstance should not be overlooked. After the decease of James, testator made a codicil to his will and made no provision for any unwilled estate. In Jackson v. Roberts, 14 Gray
(Mass.) 546, that circumstance was held to indicate that the original intention of testator was to make the bequest to a class and to disclose that it was the belief of testator that he had done so."
Allen v. Moore, 87 N.J. Eq. 176; 87 N.J. Eq. 365, dealt with a somewhat similar situation. Testator gave legacies to a number of persons including two who predeceased him, and directed that the residuary estate be divided "among the legatees above named and in proportion to their respective moneyed legacies." Vice-Chancellor Foster concluded from the whole will that testator meant the residue "to be distributed among those to whom he gave money bequests, as a class, and not as individuals," and so intestacy was avoided. He added that "another significant circumstance" was the codicil made after the death of the two legatees. It indicated "that testator's original intention was to dispose of the residue to a class and not to particular individuals and that he was satisfied that he had done so."
Counsel also cite the Massachusetts case of Jackson v.Roberts, supra. Testator gave his residuary estate to the children of Mrs. French, by name, two of whom afterward died in his lifetime. Mr. Justice Metcalf, after stating that a gift to individuals by name, though they may together constitute a class, is normally considered a gift to them as individuals, continues, "But as this rule of construction depends on the intention of the testator, it is clear that his intention cannot be conclusively inferred from the mere fact that he mentions by name the individuals who compose a class." And the court found in the will itself sufficient evidence of intention that the surviving children should take the whole. This construction *Page 304 
was confirmed in the mind of the court by a codicil made after the death of one of the children, but which left unchanged the residuary clause, "This clearly indicates that her original intention was to make the residuary bequest to the children, as a class, and her belief that she had done so; otherwise, it is to be presumed that she would have undertaken to dispose by the codicil, of Grace's share which by her death had failed of effect."
In each of these three cases, the court found from study of the will itself a gift to a class, though the members of the class were named. The codicil merely reassured the court. I take these decisions as authority for the proposition that in case of doubt whether the death of a person named in a will has caused partial intestacy, a codicil executed after such death may be a circumstance leading to a construction that will avoid intestacy. But these cases go no further; they are not authority for a forced construction of the will in order to prevent intestacy, and therefore are inapplicable to the present case. The meaning of Mrs. Bateman's will is clear and cannot be upset by surmises drawn from the codicil.
Even if the codicil had expressly revoked the residuary gift to Mrs. Hoff, no gift of the same to the other residuary legatees would be presumed. Mason's Executors v. M.E. Church, 27 N.J. Eq. 47.
I return to the suggestion that Mrs. Bateman, when she made her codicil, may have correctly understood the law that the gift to Mrs. Hoff had lapsed and would pass to her brother. The capable solicitor who drew the codicil presumably knew the law and properly advised his client. Wunderlich v. Bleyle, 96 N.J. Eq. 135; White v. Willever, 112 N.J. Eq. 546; 118 N.J. Eq. 70;Apgar v. Hoffman, 113 N.J. Eq. 233. Nor is it inherently improbable that she desired Mr. Post to benefit. After all, he was her brother.
Complainants will be advised that one-eleventh part of the residue devolved on Mr. Post.
The sixth paragraph of the will directs that all inheritance taxes "which may be levied against the bequests or beneficiaries in my said will named, are to be paid by my estate so *Page 305 
that the several beneficiaries shall receive the full amount of their respective bequests without any such deductions." Does this direction apply to the legacies given Miss Gwinnell by the codicil?
The taxes on Miss Gwinnell's legacies must be deducted therefrom and not be paid out of the general estate unless the will discloses a contrary intention. R.S. 54:35-6; Parrot v.Rogers, 86 N.J. Eq. 311. Where the law places the burden of the tax, there it rests unless the testator evinces an intention that it should be shifted. The will does not direct payment of taxes on legacies that may be given by codicil but only on "bequests or beneficaries in my said will named." The English cases hold generally that such a direction does not cover gifts made by codicil. Chatteris v. Young, 38 Eng. Rep. 304; Early v.Benbow, 63 Eng. Rep. 762; 1 Jarman 365. Though if the direction in the will be broad enough and cover "all my legacies" for instance, legacies by codicil are included. Byrne v. Curry,149 Eng. Rep. 901. Or if the codicil merely increases or alters a previous gift to the same person, the gift so rearranged is subject to the same conditions as the previous gift including freedom from legacy duty. Williams v. Hughes,53 Eng. Rep. 441; Shaftsbury v. Marlborough, 58 Eng. Rep. 827. See, also,Lyon v. Clawson, 56 N.J. Eq. 642; 58 N.J. Eq. 584.
There are no New Jersey authorities on the subject and very few in our sister states, and those not impressive. Following the English cases, I conclude that the direction in Mrs. Bateman's will to pay inheritance taxes is not broad enough to cover the legacies to Miss Gwinnell.
The next problem is whether the direction for the payment of taxes applies to the taxes on the shares of the residue itself, which pass by virtue of the will. The answer is of some consequence since clearly the direction does not cover the tax on the share as to which Mrs. Bateman died intestate, and since the transfers to Mrs. King and Mrs. Vreeland were taxable at a higher rate than those to the charitable institutions. R.S. 54:34-2.
Should the executors, in calculating the amount of the residue, first deduct the taxes on the ten shares *Page 306 
passing by the will and then divide the remainder into eleven equal parts? Or should they first divide into eleven equal shares and deduct from each part the tax payable in respect thereto?
The Massachusetts supreme court in Prescott v. St. Luke'sHospital, 182 N.E. Rep. 290, construing a will strikingly similar to the one before me, held that the taxes must be taken out of what would otherwise be the residue before the residue itself is finally ascertained and divided. In support of its decision, the court cited In re Kennedy (1917), 1 Ch. 9; Inre Wedgwood (1921), 1 Ch. 601, among other cases. The Pennsylvania supreme court reached an opposite result. In reUnger, 199 Atl. Rep. 356. The court said that inequality among the residuary legatees resulting from different tax rates "can be avoided only by an unequivocal testamentary direction that the net shares, after the payment of the inheritance taxes, are to be equal and the taxes paid out of the residuary estate as a whole." Of the two cases, the Massachusetts decision seems to me the more satisfactory. Mrs. Bateman's will, especially the sixth and seventh paragraphs which I have quoted, indicates that she desired that the beneficiaries should receive for their own use equal sums, an equality which can be obtained only by first deducting the tax from the residue as a whole.
In the sixth paragraph I observe that the word "bequest" and not "devise" is used, while in the seventh paragraph occurs "I give, devise and bequeath." Actually, Mrs. Bateman left a small parcel of real estate which passed by the residuary clause. From this circumstance, an argument could be drawn that she did not have the residuary clause in mind when she made the provision in respect to taxes. But such a construction of the will seems to me too narrow, and to make the outcome depend on a distinction which testatrix probably had not in mind. The complainants will be instructed to deduct from the general estate the taxes on the residuary shares given by the will before calculating the amount of the shares.
Counsel for the Post interest presents this ingenious argument: The real residuary gift to Mrs. Hoff was not only *Page 307 
one-eleventh of the residue, but that amount plus the tax thereon; the whole gift including the gift of the tax lapsed and passed to Mr. Post. Chemical Bank and Trust Co. v. Barnett,114 N.J. Eq. 4. This contention cannot prevail. If it be said that the gift to Mrs. Hoff included the tax, the inclusion was only the amount which the executors might be required to pay in respect to that transfer. Since they have not been required to pay anything, the gift of the tax amounted to nothing.
The last question which requires an answer, relates to the fourth paragraph of the will.
"I give and bequeath as follows: to Mrs. Alma Sterling wife of John Sterling, my gold watch; to John M. Sterling, Robert D. Sterling and Alexander H. Sterling the portrait of my late husband and myself, also five mahogany chairs, also the sum of Thirty-five hundred Dollars each; to Mrs. Harriet King my diamond ear-rings and the sum of Fifteen Thousand Dollars;" c. Mrs. Sterling (now Mrs. Skinner) contends that she is entitled to $3,500 in addition to the watch. I construe the will otherwise. Mrs. Skinner gets only a keepsake — the watch.
Complainants inquire who holds the legal title to the real estate. All the parties agree that legal title is vested in complainants as trustees for the several beneficiaries or else that complainants have power of sale. It seems unnecessary to go further. Likewise, no answer is needed to the question whether the will worked an equitable conversion of the real estate into personal property, and whether the husband of Bertha D. Smith, who has succeeded to the title of her late father, Cornelius M. Post, has an inchoate right of curtesy in the undivided share of the real estate. Mrs. Smith admits that her husband has such a right.
While still other problems are posed by the bill, the parties are unanimous as to their solution and a decree may be entered accordingly. *Page 308